*11753*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Filed: Feb. 20, 2008

------------------------------------------------------x

**NAVISION CHARTERING A/S**,

Case No.  08 CV 01666

            Plaintiff,

JUDGE RAKOFF

        - against -

**VERIFIED COMPLAINT**

**HOLCIM FZCO**,

            Defendant.

------------------------------------------------------x

Plaintiff, **NAVISION CHARTERING A/S**, (hereinafter "**NAVISION**"), by its

attorneys, **JUNGE & MELE, LLP**, complaining of the Defendant, **HOLCIM FZCO**,

(hereinafter "**HOLCIM**"), respectfully alleges as follows:

1.  This is a case of admiralty jurisdiction pursuant to 28 U.S.C. §1333(1), and

an action in aid of foreign arbitration pursuant to the Arbitration Act, 9 U.S.C. §1, *et seq.*,

and the New York Convention on the Recognition and Enforcement of Foreign Arbitral

Awards, 9 U.S.C. §201, *et seq.*, and maritime claim within the meaning of Rules 9(h) and

38(e) of the Federal Rules of Civil Procedure.

2.  At all times relevant, Plaintiff, NAVISION, was a foreign business corporation

with a place of business located at Strandvejen 102 E, 2900 Hellerup, Denmark.

3.  At all times relevant, Defendant, HOLCIM, was foreign business corporation,

with a place of business located at c/o Joachim Grieg & Co., Grieg-Gaarden, C.

Sundtsgate 17/19, 5804 Bergen, Norway.

4.        At all times relevant, Plaintiff, as disponent owner of the vessel "*JIA*

*HUA*," time chartered said vessel to Defendant under a New York Produce Exchange Form Time Charter (Code Name: "NYPE 93") for one voyage of about 35 days, without guarantee, at a charter hire rate of $36,000 per day, payable to Plaintiff in advance every 15 days, and subject to such other terms and conditions as more fully set forth in the in NYPE 93 Time Charter dated August 8, 2007, a true copy of which is annexed hereto as *Exhibit "1."*

5.      Thereafter, the vessel was employed by Defendant under the governing charter party for a 53-day period from August 17, 2007 through October 9, 2007, after which Plaintiff issued to Defendant its final Hire Statement Recap dated October 25, 2007, for the charter period which demonstrated a balance due to Plaintiff by Defendant for unpaid hire and related charter party expenses of $100,364.83; a true copy the said final Hire Statement Recap is annexed hereto as *Exhibit "2."*

6.      Under the terms of the governing charter party at clauses 98 and 108, disputes between the parties are to resolved in arbitration at London, under English law, and this proceeding is brought in aid of said arbitration, either pending or contemplated.

7.      Defendant's withholding of $100,364.83 in hire payments due and owing to Plaintiff is not supported or based on any charter party provision in the aforesaid NYPE 93 Time Charter, and as such, Defendant is in breach of its maritime contract with Plaintiff.

8.      As best as can now be estimated, Plaintiff expects to recover the

following amounts in London arbitration: on the principal claim, $100,364.83; on

interest, costs and attorney's fees through the end of arbitration in London, in an amount

to be determined; for a total award amount of $150,000.

9. Defendant cannot be found within this District within the meaning of Rule

B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal

Rules of Civil Procedure, but Defendant is believed to have or will have during the

pendency of this action, assets within this District consisting of cash, funds, freight, hire,

or credits including but not limited to electronic fund transfers in the hands of garnishees

in this District, including but not limited to the following:

1. Citibank, N.A.

2. Bank of America, N.A.

3. Bank of New York

4. Credit Suisse

5. JPMorgan Chase Bank

6. Commerce Bank

7. HSBC (USA) Bank

8. BNP Paribas

9. ABN AMRO Bank

10. Standard Chartered Bank

11.     UBS, A.G.

12.     Barclay's Bank

13.     Wachovia Bank

14.     Deutsche Bank and/or Deutsche Bank Trust Co. Americas

15.     American Express Bank

**WHEREFORE,** Plaintiff prays for the following relief:

1.  That process in due form of law according to the practice of this Court be issued against Defendant and that Defendant be cited to appear and answer the allegations herein;

2.  That, since Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all of the Defendant's tangible or intangible property or any other funds held by garnishees including but not limited to the aforementioned garnishees in the District which are due and owing or otherwise the property of Defendant up to the amount of $150,000, to secure Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in this Verified Complaint.

3.  That such property attached pursuant to the Processes of Maritime Attachment and Garnishment remain sequestered to serve as security for the payment of Plaintiff's claims as they may be embodied in any award issued out of arbitration in London.

4.  That Plaintiff have such other and further and different relief as may be just and proper, including judgment against Defendant, along with interest, costs and disbursements as allowable under law.

Dated in the City of New York on February 19, 2008

Respectfully submitted,

JUNGE & MELE, LLP
*Attorneys for Plaintiff*

/s/ Peter A. Junge

_____
Peter A. Junge (PJ-0745)
29 Broadway
New York, NY 10006
(212) 269-0061

<u>VERIFICATION</u>

PETER A. JUNGE declares as follows:

1.     I am a member of the bar of this Honorable Court and am a partner in the law firm of Junge & Mele, LLP, attorneys for Plaintiff.

2.     I have read the foregoing Complaint and I believe the contents thereof are true.

3.     The reason that this Verification is made by your deponent and not by the Plaintiff is because the Plaintiff is a foreign corporation and does not have any officers or directors within this District.

4.     The source of my information and belief are documents provided to me, statements made to me by representatives of Plaintiff, and publicly available documents concerning the Defendant on the internet.

5.     I declare under penalty of perjury that the foregoing is true and correct.

Dated in the City of New York on February 19, 2008

/s/ Peter A. Junge

_____
                    Peter A. Junge

EXHIBIT "1" TO COMPLAINT

Code Name: 'NYPE 93'
Recommended by: The Baltic and International Maritime Council (BIMCO)\
The Federation of National Associations of Ship Brokers and Agents (FONASBA)

## TIME CHARTER
New York Produce Exchange Form
Issued by the Association of Ship Brokers and Agents (U.S.A), Inc
November 6th, 1913-Amended October 20th, 1921; August 6th, 1931,October 3rd, 1946;
Revised June 12th 1981; September 14th 1993.

| | |
|---|---|
| THIS CHARTER PARTY made and concluded in…**Singapore** ………… ……………………… | 1 |
| this ……………… **08th** ……day of…...**August**…………**19**..**2007**…………………………………… | 2 |
| Between …..**Navision Chartering A/S, Copenhagen**……………………………………….. | 3 |
| As Disponent ……………………………………….. …............................... | 4 |
| Owners of the Vessel described below, and the …….**Holcim FZCO, Dubai** …………….. | 5 |
| ……………………………………………………………………………………….......... | 6 |
| ……………………………………………………………………………………………… | 7 |
| Charterers …………………………………………………………………………………… | 8 |
| Description of Vessel | 9 |
| Name …….**Jia Hua** ……../ Flag………..**ST Vincent** ………… Built ………..**1984** …….. (year) | 10 |
| Port and number of Registry……………………………………………………………… | 11 |
| Classed…….**CCS**………………………… in………………………………………………… | 12 |
| Deadweight ……….**42,310**……….~~long~~*/metric* tons (cargo and bunkers, including freshwater | 13 |
| stores not exceeding….. ~~long /metric tons~~) on a salt water draft of ……**10.763**……….metres | 14 |
| on summer freeboard. | 15 |
| Capacity........................................cubic feet grain…..............................cubic feet bale space. | 16 |
| Tonnage ..24,614/13,192…………………………………………………………GT/GRT | 17 |
| Speed about **12.5** knots, fully laden, in good weather conditions up to and including maximum | 18 |
| force ….**4**……. on the beaufort wind scale, on a consumption of about …..**22**….. ~~long~~*/metric* | 19 |
| tons of ….**Intermediate Fuel Oil (180CST) +1.5 metric tons Marine Diesel Oil**………… | 20 |
| *Delete as appropriate…………………………………………………………………………. | 21 |
| For further description see Appendix "A" (if applicable) | 22 |
| 1. Duration | 23 |
| The Owners agree to let and the Charterers agree to hire the Vessel from the time of delivery | 24 |
| for a period ~~of~~ …one time charter trip via safe ports, safe berths, safe anchorages always afloat, | 25 |
| always within Institute Warranty Limits intended via North China to Persian Gulf excluding | 26 |
| Iran/Iraq range, intended cargo slag in bulk. Duration about 35 days without guarantee within | 27 |
| below mentioned trading limits. | |
| 2. Delivery | 28 |
| The Vessel shall be placed at the disposal of the Charterers at **on arrival pilot station** | 29 |
| **Zhenjiang, Yangtze at any time day and night Sundays and Holidays included**. ………… | 30 |
| ……………………………………………………………………………………………… | 31 |
| ……………………………………………………………………………………………… | 32 |
| ……………………………………………………………….The Vessel on her delivery shall | 33 |
| be ready to receive with clean-swept, **washed down and dried up** holds and tight, staunch | 34 |
| strong and in every way fitted for ordinary cargo service, having water ballast and with | 35 |
| sufficient power to operate all cargo-handling gear simultaneously. **(See Clause 60)** | 36 |
| The Owners shall give the Charterers not less than .**5/4/3/2/1** days notice of expected date of | 37 |
| delivery **and will keep the Charterers well informed of any changes**. | 38 |
| | |
| 3. On-Off Hire Survey | 39 |
| ~~Prior to delivery and redelivery the parties shall, unless otherwise agreed, each appoint~~ | 40 |
| ~~surveyors for their respective accounts, who shall not later than at first loading port/last~~ | 41 |
| ~~discharging port respectively, conduct joint on hire/off hire surveys, for the purpose of~~ | 42 |
| ~~ascertaining quantity of bunkers on board and the condition of the Vessel. A single report~~ | 43 |
| ~~shall be prepared on each occasion and signed by each surveyor without prejudice to his~~ | 44 |
| ~~right to file a separate report setting forth items upon which the surveyors cannot agree. If~~ | 45 |
| ~~either party fails to have a representative attend the survey and sign the joint survey report~~ | 46 |
| ~~such party shall nevertheless be bound for all purposes by the findings in any report prepared~~ | 47 |
| ~~by the other party. On hire survey shall be in Charterers' time and off-hire survey on Owners'~~ | 47 |

1

~~time. (See Clause 66)~~

4. Dangerous Cargo/Cargo Exclusions                                                    48
(a) The Vessel shall be employed in carrying lawful merchandise excluding those cargoes    49
**described in clause 88** ~~any good of a dangerous, injurious, flammable or corrosive nature~~    50
~~unless carried in accordance with the requirements or recommendations of the competent~~    51
~~authorities of the country of the Vessel's registry and of ports of shipment and discharge and~~    52
~~of any intermediate countries or ports through whose waters the Vessel must pass. Without~~    53
~~prejudice to the generality of the foregoing, in addition the following are specifically excluded:~~    54
~~livestock of any description, arms, ammunition, explosives, nuclear and radioactive~~    55
~~materials~~.................................................................................................    56
.................................................................................................    57
.................................................................................................    58
.................................................................................................    59
.................................................................................................    60
.................................................................................................    61
.................................................................................................    62
.................................................................................................    63
.................................................................................................    64
(b) If IMO-classified cargo is agreed to be carried, the amount of such cargo shall be limited    65
to. tons and the Charterers shall provide the Master with any evidence he may reasonably    66
show that the cargo is packaged, labeled, loaded and stowed in accordance with IMO    67
regulations, failing which the Master is entitled to refuse such cargo or, if already loaded, to    68
unload to at the Charterers' risk and expense.                                          69

5. Trading Limits                                                                       70
~~The Vessel shall be employed in such lawful trade between safe ports and safe places within~~    71
.................................................................................................    72
.................................................................................... ~~excluding~~    73
.................................................................................................    74
                                                                                        75
........ **(See Clause 89)** ............................................~~as the Charterers shall direct.~~    76
6. Owners to Provide                                                                    77
The Owners shall provide and pay for the insurance of the Vessel, except as otherwise    78
provided and for all provisions, freshwater, drinking water, lubricating oil, cabin, deck, engine-    79
room and other necessary stores, including boiler water; shall pay for wages, consular    80
shipping and discharging fees of the crew and charges for port services pertaining to the    81
crew; shall maintain the Vessel's class and keep her in thoroughly efficient state in hull,    82
machinery and equipment for and during the service, and have a full complement of officers    82
and crew.
7. Charterers to Provide.                                                               83
The Charterers, while the Vessel is on hire, shall provide and pay for all the bunkers except    84
as otherwise agreed; shall pay for port charges (including compulsory watchmen and cargo    85
watchmen and compulsory                                                                 85
garbage disposal), all communication expenses pertaining to the Charterers' business at    86
cost, **customary and compulsory** pilotages,                                            86
towages, agencies, commissions, consular charges (except those pertaining to individual    87
crew members or flag of the Vessel), and all other usual expenses except those stated in    88
Clause 6, but when the Vessel puts into a port for cause for which the Vessel is responsible    89
(other than by stress of weather) then all such charges incurred shall be paid by the Owners.    90
Fumigations ordered because of illness of the crew shall be for the Owners' account.    91
Fumigations ordered because of cargoes carried or ports visited while the Vessel is    92
employed under this Charter Party shall be for Charterers' account. All other fumigations shall    92
be for the Charterers' account after the Vessel has been on charter for a continuous period of    93
six months or more. **(See Clause 47)**                                                 94
The Charterers shall provide and pay for necessary dunnage and also any extra fittings    95
requisite for a special trade or unusual cargo, but the Owners shall allow them the use of any    96
dunnage and other equipment already aboard the Vessel. Prior to redelivery the Charterers    97

2

shall remove their dunnage and fittings at their cost and in their time. (**See Clause 99**).  98
8. Performance of Voyage.  99
(a)The Master shall perform the voyages with due despatch and shall render all customary  100
assistance with the Vessel's crew. The Master shall be conversant with the English language  101
(although appointed by the Owners) shall be under the orders and directions of the Charterer  102
as regards employment and agency; and the Charterers shall perform all cargo handling,  103
including but not limited to  
loading,stowing,trimming,lashing,securing,dunnaging,unlashing,discharging and tallying, at  104
their risk and expense, under the supervision of the Master.  
(b)If the Charterers shall have reasonable cause to be dissatisfied with the conduct of the  105
Master or officers, the Owners shall, on receiving particulars of the complaint, investigate the  106
same, and if necessary, make a change in the appointments.  107
9.Bunkers (**See Clause 68**)  108
(a)The Charterers on delivery, and the Owners on redelivery, shall take over and pay for all  109
fuel and diesel oil remaining on board the Vessel as hereunder. The Vessel shall be delivered  110
with ……………………… long*/metric* tons of fuel oil at the price of ……………… per  111
ton; …………………….. tons of diesel oil at the price of ……………….per ton. The vessel shall  112
be redelivered with:……………… tons of fuel oil at the price of …… per ton;……………………  113
**about metric** tons of diesel oil at the price  114
of …………………………………………….per ton.  115
*Same tons apply throughout this clause.  116
(b) ~~The Charterers shall apply bunkers of a quality suitable for burning in the Vessel's engines~~  117
~~auxiliaries and which conform to the specification(s) as set out in Appendix A.~~  118
~~The Owners reserve their right to make a claim against the Charterers for any damage to the~~  119
~~main engines or the auxiliaries caused by the use of unsuitable fuels or fuels not~~  120
~~complying with the agreed specification(s). Additionally, if bunker fuels supplied do not~~  121
~~conform with the mutually agreed specification(s) or otherwise prove unsuitable for burning in~~  122
~~the Vessel's engines or auxiliaries, the Owners shall not be held responsible for any reduction~~  123
~~in the Vessel's speed performance and/or increased bunker consumption, nor for any time~~  124
~~lost and any other consequences.~~  
10. Rate of Hire/Redelivery Areas and Notices  125
The Charterers shall pay for use and hire of the said Vessel at the rate of **US$36,000 (thirty-**  126
**six thousand only) daily including overtime payable 15 days inadvance.** ~~U.S currency,~~  126
~~daily, or$...~~ U.S. currency per ton on the Vessel's total deadweight carrying capacity,  127
including  
bunkers and stores, on ……. summer freeboard, **Owners to submit hire invoice on headed**  128
**paper on delivery and 15 days thereafter,** ~~per 30 days,~~  
commencing on and from the day of her delivery, as aforesaid, and at and after the same rate  129
for any part of a month; hire shall continue until the hour of the day of her redelivery in  
like good order and condition,  130
ordinary wear and tear excepted, to the Owners (unless Vessel lost) ~~at~~ **on dropping last**  131
**outward sea pilot one safe port U.A.E. ports in Charterers option at any time day and night**  132
**Sundays and Holidays included** ………………………… unless otherwise mutually agreed.  133
The Charterers shall give the Owners not less than **20/15/10/7 days approximate notice**  134
**and 3/2/1 days definite notice** of the Vessel's  135
expected date and probable port of redelivery.  136
For the purpose of hire calculations, the times of delivery, redelivery or termination of charter  137
shall be adjusted to GMT.  138
11. Hire Payment  139
    (a)  Payment  140
~~Payment of Hire shall be made so as to be received by the Owners or their designated payee~~  141
~~in ………………………………………………………………………………………………………..~~  142
~~………………………………………………………………………………………………………….~~  143
~~………………………………………………………………………………………………………….~~  144
~~…………………………………………………………………………………………………………in~~  145
~~currency, or in United States Currency, in funds available to the Owners on the due date,~~  146
~~15 days inadvance, and for the last month or part of same the approximate amount of hire~~  147
~~and should same not cover the actual time, hire shall be paid for the balance day by day as it~~  148
~~becomes due, if so required by the Owners. Failing the punctual and regular payment of the~~  149

~~hire or on any fundamental breach whatsoever of this Charter Party, the Owners shall be at~~ 150
~~Liberty to withdraw the Vessel from the service of the Charterers without prejudice to any~~ 151
~~claims they (the Owners) may otherwise have on the Charterers.~~ 152
~~At any time after the expiry of the grace period provided in Sub clause 11(b) hereunder and~~ 153
~~while the hire is outstanding, the Owners shall, without prejudice to the liberty to withdraw,~~ 154
~~entitled to withhold the performance of any and all of their obligations hereunder and shall~~ 155
~~have no responsibility whatsoever.~~
~~for any consequences thereof, in respect of which the Charterers hereby indemnify the~~ 156
~~Owners, and hire shall continue to accrue and any extra expenses resulting from such with~~ 157
~~holding shall be for the Charterers' account. (See Clause 48)~~ 158
(b)Grace Period – **See Clause 48** 159
Where there is failure to make punctual and regular payment of hire due to oversight 160
negligence, errors or omissions on the part of the Charterers or their bankers, the Charterers 161
shall be given by the Owners ..... clear banking days (as recognized at the agreed place of 162
payment) written notice to rectify the failure and when so rectified within those... days 163
following the Owners' notice, the payment shall stand as regular and punctual. 164
Failure by the Charterers to pay the hire within ...... days of their receiving the Owners' notice 165
as provided herein, shall entitle the Owners to withdraw as set forth in Sub-clause 11(a)above 166
(c)Last Hire Payment – **See Clause 48** 167
Should the Vessel be on her voyage towards port of redelivery a t the time the last and/or the 168
penultimate.
Payment of hire is/are /are due, said payment(s) is/are to be made for such length of time as the 169
Owner and the Charterer may agree upon as being the estimated time necessary to complete 170
the voyage and taking into account bunkers actually on board, to be taken over by the Owner 171
and estimated disbursements for the Owners' account before redelivery. Should same not 172
cover the actual time, hire is to be paid for the balance, day by day, as it becomes due. When 173
the Vessel has been redelivered, any difference is to be refunded by the Owners or paid by 174
the Charterers, as the case may be.
(d) Cash Advances. 175
Cash for the Vessel's ordinary disbursements at any port may be advanced by the Charterers 176
as required by the Owners, subject to 2 percent commission and such advances shall be 177
deducted from the hire. The Charterers, however, shall in no way be responsible for the 178
application of such advances.
12. Berths 179
The Vessel shall be loaded and discharged in any safe dock or at any safe berth or safe place 180
that Charterers or their agents may direct, provided the Vessel can safely enter, lie and depart 181
always afloat at any time of tide ................................................................................ 182
.................................................................................................................................... 182
13. Spaces Available 183
(a) The whole reach of the Vessel's holds,decks and other cargo spaces (not more than 184
she can reasonably and safely stow and carry), also accommodations for supercargo, if 185
carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for 186
Vessels' officers, crew, tackle, apparel, furniture, provisions, stores and fuel. 187
(b)~~ In the event of deck cargo being carried, the Owners are to be and are hereby indemnify~~ 188
~~by the Charterers for any loss and/or damage and/or liability of whatsoever nature caused to~~ 189
~~the Vessel as a result of the carriage of deck cargo and which would not have arisen had~~ 190
~~deck cargo not been loaded.~~
14. Supercargo and Meals. 191
The Charterers are entitled to appoint a supercargo, who shall accompany the Vessel at the 192
Charterers' risk and see that voyages are performed with due despatch. He is to be furnished 193
with free accommodation and same fare as provided for the Masters' table, the Charterers 194
paying at the rate of..**US$10.00**.. per day. The Owners shall victual pilots and customs officer 195
and also, when authorized by the Charterers or their agents, shall victual tally clerks, 196
stevedore's foreman, etc., Charterers paying at the rate of ... **US$5.00** ... per meal for all 197
victualling. (see also Clause 119) 197
15. Sailing Orders and Logs 198
The Charterers shall furnish the Master from time to time with all requisite instructions and 199
sailing directions, in writing, in English language, and the Master shall keep full and correct 200
deck engine logs of the voyage or voyages, which are to be patent to the Charterers or their 201

4

agents, and furnish the Charterer, their agents or supercargo, when required with a true copy | 202
of such deck and engine logs, showing the course of the Vessel, distance run and the | 203
consumption of bunkers. Any log extracts required by the Charterers shall be in the English | 204
language. **(See Clause 107)**

16. Delivery/Cancelling | 205

If required by the Charterers, time shall not commence before .**00:01 LT 09th August 2007** | 206
and should the Vessel not be ready for delivery on or before **23:59 LT13th August 2007**. ~~but~~ | 207
~~not later than....hours~~ the charterers shall have the option cancelling this Charter Party. | 208
**Laycan to be based on local time but hire to be based on GMT.**

~~Extension of cancelling~~ | 209
~~If the Owners warrant that, despite the exercise of due diligence by them, the Vessel will not~~ | 210
~~be ready for delivery by the cancelling date, and provided the Owners are able to state with~~ | 211
~~reasonable certainty the date on which the Vessel will be ready, they may, at the earliest~~ | 212
~~seven days before the Vessel is expected to sail for the port or place of delivery, require the~~ | 213
~~Charterers to declare whether or not they will cancel the Charter Party. Should the Charterers~~ | 214
~~elect not to cancel, or should they fail to reply within two days or by the cancelling date,~~ | 215
~~whichever shall first occur, then the seventh day after the expected date of readiness for~~ | 216
~~delivery as notified by the Owners shall replace the original cancelling date. Should the~~ | 217
~~vessel be further delayed, the Owners shall be entitled to require further declarations of the~~ | 218
~~Charterers in accordance with this Clause.~~

17. OffHire | 219
In event of loss of time from deficiency and/or default and/or strike of officers or crew, or | 220
deficiency of stores, fire, breakdown of, or damages to hull, machinery or equipment, | 221
grounding, detention by the arrest of the Vessel, (unless such arrest is caused by events for | 222
which the Charterers, their servants, agents or subcontractors are responsible), or detention | 223
by average accidents to the Vessel or cargo unless resulting from inherent vice, quality or | 224
defect of the cargo, drydocking for the purpose of examination or painting bottom, or by any | 225
other similar cause preventing the full working of the Vessel, the payment of hire and | 226
overtime,
if any, Shall cease for the time thereby lost. Should the Vessel deviate or put back during a | 227
voyage, contrary to the orders or directions of the Charterers, for any reason other than | 228
accident to the cargo or where permitted in lines 257 to 258 hereunder, the hire is to be
suspended from the time of her deviating or putting back until she is again in the same or | 229
equidistant position from the destination and the voyage resumed therefrom. All bunker used | 230
By the Vessel while off-hire shall be for the Owners' account. In the event of the Vessel being | 231
driven into port or to anchorage through stress of weather, trading to shallow harbors or to | 232
rivers or ports with bars, **in fog or in poor visibilities caused by others (snow fall, heavy** | 233
**rain,etc)** any detention of the Vessel and/or expenses resulting from such detention shall be
for the Charterers account. If upon the voyage the speed be reduced by defect or breakdown
of, any part of her hull, machinery or equipment, the time so lost, and the cost of any extra | 234
bunkers consumed in consequence thereof, and all extra proven expenses may be deducted | 235
from the hire. | 236

18.Sublet | 237
Unless otherwise agreed, the Charterers shall have the liberty to sublet the Vessel for all or | 238
any part of the time covered by this Charter Party, but the Charterers remain responsible for | 239
the fulfillment of this Charter Party. | 240

19. Drydocking | 241
The Vessel was last drydocked................................................................................. | 242
~~*(a) The Owners shall have the option to place the Vessel in dryock during the currency of~~ | 243
~~this Charter at a convenient time and place, to be mutually agreed upon between the Owner~~ | 244
~~and the Charterers, for bottom cleaning and painting and/or repair as required by class or~~ | 245
~~dictated by circumstances.~~
*(b) Except in case of emergency no drydocking shall take place during the currency of this | 246
Charter Party. | 247
*Delete as appropriate | 248
20. Total Loss | 249
Should the Vessel be lost, money paid in advance and not earned (reckoning from the date of | 250
loss or being last heard of) shall be returned to the Charterers at once. | 251
21. Exceptions | 252

5

The act of God, enemies, fire, restraint of princes, rulers and people, and all dangers and    253
accidents of the seas, rivers, machinery, boilers and navigation throughout this Charter,    254
always mutually excepted.    255
22. Liberties    256
The Vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist    257
Vessels in distress and to deviate for the purpose of saving life and property.    258
23.Lien    259
The Owners shall have a lien upon all cargoes and all sub-freights and/or-sub hire for any    260
amounts due under this Charter Party, including general average contributions, and the    261
Charterers shall have a lien on the Vessel for all monies paid in advance and not earned, and    262
any overpaid hire or excess deposit to be returned at once.    263
The Charterers will not directly or indirectly suffer, nor permit to be continued, any lien or    264
encumbrance, which might have priority over the title and interest of the Owners in the Vessel    265
The Charterers undertake that during the period of this Charter Party, they will procure any    266
supplies or necessaries or service, including any port expenses and bunkers, on the credit of    267
the Owners' or in the Owners' time. **Same to be made clear by Charterers to their**    268
**suppliers on their invoices.**
24. Salvage    269
All derelicts and salvage shall be for the Owners' and the Charterers' equal benefit after    270
deducting Owners' and Charterers' expense and crew's proportion.    271
25. General Average    272
General average shall be adjusted according to York-Antwerp Rules 19874 as amended    273
1990, or any subsequent modification thereof, **in United Kingdom** and settled **in United**    274
**States** currency.
The Charterers procure that all Bills of Lading issued during the currency of the Charter Party    275
will contain a provision to the effect that general average shall be adjusted according to York-    276
Antwerp Rules 1974, as amended 1990, or any subsequent modification thereof and will    277
include the "New Jason Clause' as per Clause 31.    278
Time charter hire shall not contribute to general average.    279
26. Navigation    280
Nothing herein stated is to be construed as a demise of the Vessel to the Time Charterer. The    281
Owners shall remain responsible for the navigation of the Vessel, acts of pilots and tug boats,    282
insurance, crew, **and handling of cargo clauses on behalf of Owners and the Charterers.**    283
And all other matters, same as when trading for their own account.    283
27. Cargo Claims.    284
Cargo claims as between the Owners and the Charterers shall be settled in accordance with    285
the Inter-Club New York Produce Exchange Agreement of February 1970, as amended May,    286
1984, or any subsequent modification or replace thereof.    287
28. Cargo Gear and Lights    288
The Owners shall maintain the cargo handling gear of the Vessel which is as follows: **(See**    289
**Clause 55)** …………………………………………………………………………………………    290
…………………………………………………………………………………………………………    291
…………………………………………………………………………………………………………    292
providing gear (for all derricks or cranes) capable of lifting capacity as described. The Owners    293
shall also provided on the Vessel for nightwork lights as on board, but all additional lights over    294
those on board shall be at the Charterers expense. The Charterers shall have the use of    295
any gear on board the Vessel. If required by the Charterers, the Vessel shall work night and    296
day and all cargo handling gear shall be at the Charterers' disposal during loading and    297
discharging. In the event of disabled cargo handling gear, or insufficient power to operate the    298
same, the Vessel is to be considered to be off-hire to the extent that time is actually lost to the    299
lost to the Charterers and the Owners to pay stevedore stand-by charges occasion thereby,    300
unless such   disablement or insufficiency of power is caused by the Charterers' stevedores.    301
If required by the Charterers, the Owners shall bear the cost of hiring shore gear in lieu    302
thereof, in which case the Vessel shall remain on hire.

29. Crew Overtime    303
~~In lieu of any overtime payments to officers and crew for work ordered by the Charterers or~~    304
~~their agents, the Charterers shall pay the Owners, concurrently with the hire per month or prorata~~    305

6

30. Bills of Lading (**See also Clause 82 and 96**) <span>306</span>
(a) The Master shall sign the Bills of Lading ~~or waybills~~ for cargo as presented in conformity with <span>307</span>
<span>308</span>
Mates ~~or tally clerk's~~ receipts. However the Charterers may sign bills of lading ~~or way bills~~ on <span>309</span>
behalf of the Master, with the Owners' prior written authority, always in conformity with mates <span>310</span>
~~or tally clerk's~~ receipts. <span>311</span>
(b) All bills of lading ~~or waybills~~ shall be without prejudice to this Charter Party and the <span>312</span>
Charterers shall indemnify the Owners against all consequences or liabilities which may arise <span>313</span>
from any inconsistency between this Charter Party and any bill of lading or waybills signed by <span>314</span>
the Charterers or by the Master at their request. <span>315</span>
(c) Bills of Lading covering deck cargo shall be claused: " Shipped on deck at Charterers', <span>316</span>
Shipper's and Receivers' risk, expense and responsibility without liability on the part of the <span>317</span>
Vessel, or her Owners for any loss, damage, expense or delay howsoever caused." <span>318</span>
31. Protective Clauses <span>318</span>
This Charter Party is subject to the following clauses all of which are also to be included in all <span>319</span>
bills of lading ~~or waybills~~ issued hereunder" <span>320</span>
(a) Clause Paramount <span>321</span>
"This Bill of Lading shall have effect subject to the provisions of the carriage of Goods by <span>322</span>
Sea Act of the United States, the Hague Rules, or the Hague-Visby Rules, as applicable, or <span>323</span>
such other similar national legislation as may mandatorily apply by virtue of origin or <span>324</span>
destination of the Bills of Lading, which shall be deemed to be incorporated herein and <span>325</span>
nothing herein contained shall be deemed a surrender by the carrier any of its rights or <span>326</span>
immunities or an increase of any of its responsibilities or liabilities under said applicable Act. <span>327</span>
If any term of this bill of lading be repugnant to said applicable Act to any extent, such term <span>328</span>
shall be void to that extent, but no further". <span>329</span>
(b) Both-To-Blame Collision Clause <span>330</span>
<span>331</span>
"If the ships comes into collision with another ship as a result of the negligence of the other <span>332</span>
ship and any act, neglect or default of the Master, Mariner, pilot or the servants of the carrier <span>333</span>
in the navigation or in the management of the ship, the Owners of the goods carried <span>334</span>
hereunder will indemnify the carrier against all loss or liability to the other or non-carrying ship <span>334</span>
or her Owners insofar as such loss or liability represents loss of, or damage to, or any claim <span>335</span>
whatsoever of the Owners of said goods, paid or payable by the other or non-carrying ship or <span>336</span>
her Owners of said goods and set off, recouped or recovered by the other or non-carrying <span>337</span>
ship or her as part of their claim against the carrying ship or carrier. The foregoing provisions <span>339</span>
shall also apply where the Owners, operators or those in charge of any ships or objects other <span>339</span>
than, or in addition to, the colliding ships or objects are at fault in respect to a collision or <span>340</span>
contact. <span>340</span>
And <span>341</span>
(c) New Jason Clause <span>342</span>
In the event of accident, danger, damage or disaster before or after the commencement of the <span>343</span>
voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for <span>344</span>
the consequence of which, the carrier is not responsible, by statute, contract or otherwise, the <span>344</span>
goods, Shippers, Consignees or Owners of the goods shall contribute with the carrier in general <span>345</span>
average to the payment of any sacrifices, losses or expenses of a general average nature that <span>346</span>
may be made or incurred and shall pay salvage and special charges incurred in respect of the <span>347</span>
goods. <span>348</span>
If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if <span>349</span>
salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may <span>349</span>
deem sufficient to cover the estimated contribution of the goods and any salvage and special <span>350</span>
charges thereon shall, if required, be made by the goods, Shippers, Consignees or Owners of <span>351</span>
the goods to the carrier before delivery. <span>352</span>
And <span>353</span>
(d) U.S. Trade – Drug Clause <span>354</span>
" In pursuance of the provisions of the U.S. Anti Drug Abuse 1986 or any re-enactment <span>355</span>
thereof, the Charterers warrant exercises the highest degree or care and diligence in <span>356</span>
preventing unmanifested narcotic drugs and marijuana to be loaded or concealed on board <span>357</span>
the Vessel. <span>358</span>

Non-compliance with the provisions of this clause shall amount to breach of warranty for consequences of which the Charterers shall be liable and shall hold the Owners, the Master and the crew of the Vessel harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them individually or jointly. Furthermore, all time lost and all expenses incurred, including fines as a result of the Charterers' breach of the provisions of this Clause shall be for the Charterers' account and the Vessel shall remain on hire.

Should the Vessel be arrested as a result of the Charterers' non-compliance with the provisions of this clause, the Charterers shall at their expense take all reasonable steps to secure that within a reasonable time the Vessel is released and at their expense put up the bails to secure release of the Vessel.

The Owners shall remain responsible for all time lost and all expenses incurred, including fines, in the event that unmanifested narcotic drugs and marijuana are found in the possession or effects of the Vessel's personnel".

And

(e) War Clause (**See Clause 70 and 114**)

(i) No contraband of war shall be shipped. The Vessel shall not be required, without the consent of the Owners, which shall not be unreasonably withheld, to enter any port or zone which is involved in a state of war, warlike operations, or hostilities, civil strife, insurrection or piracy whether there be a declaration of war or not, where the Vessel, cargo or crew might reasonably be expected to be subject to capture, seizure or arrest, or to a hostile act by a belligerent power (the term" power" meaning any dejure or de facto authority or any purported governmental organization maintaining naval, military or air forces).

(ii) If such consent is given by the Owners, the Charterers will pay the provable additional cost of insuring the Vessel against hull war risks in an amount equal to the value under her ordinary hull policy but not exceeding a valuation of .... In addition, the Owners may purchase and the Charterers will pay for war risk insurance on ancillary risks such as loss of hire, freight disbursements, total loss, blocking and trapping etc. If such insurance is not obtainable commercially or through a government program, the Vessel shall not be required to enter or remain at any such port or zone.

(iii) In the event of the existence of the conditions described in (i) subsequent to the date of this Charter, or while those on hire under this Charter, the Charterers shall, in respect of voyages to any such port or zone assume the provable additional cost of wages and insurance properly incurred in connection with master, officers and crew as a consequence of such war, warlike operations or hostilities.

(iv) Any war bonus to officers and crew due to the Vessel's trading or cargo shall be for the Charterers' account."

32. War Cancellation

In the event of the outbreak of war (whether there be a declaration of war or not) between any two or more of the following countries ............. **The United States of America, The United Kingdom, France, Germany, Russia, Australia, The People's Republic of China and the** vessel's flag state .............................................................................................
either the Owners or the Charterers may cancel this Charter Party. Whereupon, the Charterers shall redeliver the Vessel to the Owners in accordance with Clause 10; if she has cargo on board, after discharge thereof at destination or, if debarred under this Clause from reaching or entering it, at a near open and safe port as directed by the Owners; or, if she has no cargo onboard, at the port at which she then is: or if at sea, at a near open and safe port as directed by the Owners. In all cases hire shall continue to be paid in accordance with Clause11 and except as aforesaid all other provisions of this Charter Party shall apply until redelivery.

33. Ice

The Vessel shall not be required to enter or remain in any icebound port or area, nor any port or area where lights or lightships have been or are about to be withdrawn by reason of ice, nor where there is risk that in the ordinary course of things the Vessel will not able on account of ice to safely enter and remain in the port or area or to get out after having completed loading and discharging. **Vessel not to follow ice breakers.** ~~Subject to the Owners' prior approval the Vessel is to follow ice breakers when reasonably required with regard to her size, construction and ice class.~~

34. Requisite

Should the Vessel be requisitioned by the government of the Vessel's flag during the period of this Charter Party, the Vessel shall be deemed to be off-hire during the period of such requisition and any hire paid by the said government in respect of such requisition period shall be retained by the Owners. The period during which the Vessel on requisition to the said government shall count as part of the period provided for in this Charter Party. 410 411 412 413 414

If the period of requisition exceeds...... months, either party shall have the option of cancelling this Charter Party and no consequential claim may be made by either party. 415 416

35. Stevedore Damage (See Clause 101) 417

~~Notwithstanding anything contained herein to the contrary, the Charterers shall pay for any and all damage to the Vessel caused by stevedores provided the Master has notified the Charterers and/or their agents in writing as soon as practical but not later than 48 hours after any damage is discovered. Such notice to specify the damage in detail and to invite Charterers to appoint a surveyor to access the extent of such damage.~~ 418 419 420 421 422

~~(a) In case of any and all damage(s) affecting the Vessel's seaworthiness and/or the safety of the crew and/or affecting the trading capabilities of the Vessel, the Charterers shall immediately arrange for repairs of such damage(s) at their expense and the Vessel is to remain on hire until such repairs are completed and if required passed by the Vessel's classification society.~~ 423 424 425 426 427

~~(b) Any and all damage(s) not described under point (a) above shall be repaired at the Charterers' option, before or after redelivery concurrently with the Owners' work. In such case no hire and/or expenses will be paid to the Owners except and insofar as the time and/or the expenses required for the repairs for which the Charterers are responsible, exceed the time and/or expenses necessary to carry out the Owners' work.~~ 427 428 429 430 431

36. Cleaning of Holds (See Clause 60 and 61) 432

The Charterers shall provide and pay extra for sweeping and/or washing and/or cleaning of holds between voyages and/or between cargoes provided such work can be undertaken by the crew and is permitted by local regulations, at the rate of **US$3,500 (three thousand and five hundred dollars) for sweeping and washing** .... per ~~hold~~ occasion. 433 434 435 436

In connection with any such operation, the Owners shall not be responsible if the Vessel's holds are not accepted or passed by the port of any other authority. The Charterers shall have the option to re-deliver the Vessel with unclean-unswept holds against a lumpsum payment of **US$5,000 (five thousand dollars)**.... In lieu of cleaning. 436 437 438 439

37. Taxes (See Clause 112) 439

Charterers to pay all local, State, National taxes and/or dues assessed on the Vessel or the Owners resulting from the Charterers' orders herein, whether assessed during or after the currency of this Charter Party including any taxes and/or dues on cargo and/or freights and/or sub-freights and/or hire (excluding taxes levied by the country of the flag of the Vessel or the Owners). 440 441 442 443 444

38. Charterers' Colors. 445

~~The Charterers shall have the privilege of flying their own house flag and painting the Vessel with their own markings. The Vessel shall be repainted in the Owners' colors before termination of the Charter Party. Cost and time of painting, maintaining and repainting those changes effected by the Charterers shall be for the Charterers' account.~~ 445 446 447 448

39. Laid Up Return (See also Clause 63) 449

The Charterers shall have the benefit if any return insurance premium receivable by the Owners from their underwriters as and when received from underwriters by reason of the Vessel being in port for a minimum period of 30 days if on full hire for this period or prorata for the time actually on hire. 450 451 452 453

40. Documentation 454

The Owners shall provide any documentation relating to the Vessel that may be required to permit the Vessel to trade within the agreed trade limits, including but not limited to certificates of financial responsibility for oil pollution, provided such oil pollution certificates are obtainable from the Owners' P&I Club, valid international tonnage certificate, Suez and Panama tonnage certificates, valid certificate of registry and certificates relating to the strength and/or serviceability of the Vessel's gear. 454 455 456 457 458 459

41. Stowaways 460

(a) (i) The Charterers warrant to exercise due care and diligence in preventing stowaways in gaining access to the Vessel by means of secreting away on the goods and/or containers shipped by the Charterers. 460 461 462

(ii) If, despite the exercise of due care and diligence by the Charterers, stowaways have gained access to the Vessel by means of secreting away in the goods and/or containers shipped by the Charterers, this shall amount to breach of charter for the consequences of which the Charterers shall be liable and shall hold the Owners harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them. Furthermore, all time lost and all expenses ~~whatsoever and howsoever~~ incurred, including fines, shall be or the Charterers' account and the Vessel shall remain on hire.

(iii) Should the Vessel be arrested as a result of the Charterers' breach of charter according to sub-clause (a) (ii) above, the Charterers shall take all reasonable steps to secure that, within a reasonable time, the Vessel is released and at their expense put up bail to secure release of the Vessel.

(b) (i) If, despite the exercise of due care and diligence by the Owners, stowaways have gained access to the Vessel by means other than secreting away in the goods and/or containers shipped by the Charterers, all time lost and all expenses (~~whatsoever and howsoever~~ incurred, including fines, shall be for the Owners' account and the Vessel shall be off-hire.
(ii) Should the vessel be arrested as a result of stowaways having gained access to the Vessel by means other than secreting away in the goods and/or containers shipped by the Charterers, the Owners shall take all reasonable steps to secret that, within a reasonable time, the Vessel is released and at their expense put up bail to secure release of the Vessel.

## 42. Smuggling (See also Clause 64)
In the event of smuggling by the Master, Officers and/or crew, the Owners shall bear the cost of any fines, taxes, or imposts and the Vessel shall be off-hire for any time lost as a result thereof.

## 43. Commissions

A commission of .... **1.25** .... Percent is payable by the Vessel and the Owners to ....
**Probulk Chartering Pte Ltd** ...............................................................................
.........................................................................................................................
................................................................................ on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.
## 44. Address Commission
An address commission of ...................... **2.5** .............................. percent is payable to ........................................ **Charterers**...................................................................
.........................................................................................................................
................................................. on hire earned and paid under this Charter.
## 45. Arbitration (See Clause 98)
(a) ~~New York~~
~~All disputes arising out of this contract shall be arbitrated at New York in the following manner, and subject to U.S. Law:~~
~~One Arbitrator is to be appointed by each of the parties hereto and a third by the two so chosen, their decision or that of any two of them shall be final and for the purpose of enforcing any award, this agreement may be made a rule of the court. The Arbitrators shall be commercial men, conversant with shipping matters. Such Arbitration is to be conducted in accordance with the rules of the Society of Maritime Arbitrators Inc.~~
~~For disputes where the total amount claimed by either party does not exceed US$..... the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators Inc.~~
~~(b) London~~
~~All disputes arising out of this contract shall be arbitrated at London and, unless the parties agree forthwith on a single Arbitrator, be referred to the final arbitrament of two Arbitrators carrying on business in London who shall be members f the Baltic Mercantile & Shipping Exchange and engaged in Shipping, one to be appointed by each of the parties, with power to such Arbitrators to appoint an Umpire. No award shall be questioned or invalidated on the ground that any of the Arbitrators is not qualified as above, unless objection to his action to be~~

10

~~taken before the award is made. Any dispute arising hereunder shall be governed by English Law.~~ 515
516

~~For disputes where the total amount claimed by either party does not exceed US$...... the arbitrations shall be conducted in accordance with the Small claims Procedure of the London Maritime Arbitrators Association.~~ 517
518

*Delete para (a) or (b) as appropriate 519

** Where no figure is supplied in the blank space this provision only shall be void but the other provisions of this clause shall have full force and remain in effect. 520
521

If mutually agreed clauses ..**46** to ... **121** both inclusive, as attached hereto are fully incorporated in this Charter Party. 522
523
524

525
526

APPENDIX "A" 

To Charter Party dated ..... 08th August 2007 527

Between .... Navision Shipping Company, Horsens 528

And .... Holcim FZCO, Dubai..... 529

Further details of the Vessel....... 530

MV "JIA HUA" ...... 531

Enc.

11

## ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM
## CHARTER PARTY DATED 08th AUGUST 2007

**Clause 46    Breakdown/Loss of Time – Off Hire**

In the event of any loss of time due to, but not limited to:

- Deficiency of Officers/crew/men or stores
- Breakdown or damage in hull machinery or equipment
- Detention by average accidents to ship/cargo except cargo with latest defects, the particular quality of inherent vice of the cargo including collisions/stranding
- Repairs/drydocking or other necessary measure to maintain the efficiency of the vessel
- Failure to possess such valid certificates or other documentation for the vessel/ officers/crew
- Breakdown or non-conformity or disablement of any or any/all gear and equipment necessary for loading/discharging cargo or preventing full operation of vessel (excluding grabs, where operations of grabs is for Charterers' account)

**Clause 47    Fumigation/Deratization**

Vessel to be delivered with valid fumigation deratization certificate on board and if this does not cover the whole period of timecharter and fumigation is necessary, cost of same and detention to be for Owners' account.  Any fumigation required as a result of cargoes carried during this Charter Party to be for Charterers' account and in this case Charterers to pay for any expenses connected with fumigation.

**Clause 48    Hire Payment**

First hire and value of bunker on delivery to be paid within three (3) common banking days after delivery and receipt of Owners hire invoice via fax or email every fifteen (15) days in advance.

Notwithstanding anything contained herein to the contray, if at any time during the currency of this charter hire shall become due on or during a Saturday, Sunday or a National Holiday or outside normal office hours, or at any time when for reasons beyond their reasonable control prevents Charterers from effecting payment of hire on the due date, payment of hire may be made on the next banking day immediately following the date on which hire becomes due.

Where there is any failure to make hire payment on the due date because of an oversight or negligence or error or omission of Charterers' employees, banks or agents or otherwise for any reason where there is absence of intention to fail to make payment as set out. Charterers shall be given by Owners three (3) banking days' notice to rectify the failure, where so rectified the payment shall stand as a punctual and regular payment.

Without mutually agreed, Charterers should not to withhold from charter hire during the period of this charter.

**Clause 49    Safe Ballast**

Owners guarantee vessel always to be safe in ballast and it is agreed that if any solid ballast is required, all expenses for same including time used in loading and discharging to be for Owners' account.

## ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM
## CHARTER PARTY DATED 08th AUGUST 2007

**Clause 50     Ballasting/Deballasting**

Vessel to ballast/deballast clean water ballast tanks, if required by Charterers or their Agents at any time during loading and/or discharging, free of expense to Charterers but in Charterers' time.  All ballasting/deballasting shall be at the discretion of Master having regard to stability and seaworthiness of the vessel.

**Clause 51     Confidential Fixture**

Both Owners and Charterers will officially keep negotiations and fixture private and confidential.

**Clause 52     Black List**

Owners guarantee that vessel is not black-listed by trading countries in all respects and to guarantee vessel not to be rejected at any ports of call and fully covered by first class P and I Club during charter period

**Clause 53     Cuba, C.I.S. Pacific Trading**

Owners confirm that the vessel has not traded to or from Cuba within the last 180 days and Owners guarantee that the vessel has not traded to or form any C.I.S. Pacific ports since 1st January 2004   Furthermore, Owners guarantee that the vessel meets all agriculture Canada Plant Protection Division and U.S.D.A. Plant Protection and Quarantine Office Regulations concerning Asian Gypsy moth eggs or any form of Asian Gypsy moth life.

Should the vessel be found to have been infected, then the vessel to be considered off-hire until the vessel has been passed/cleaned by Canadian/U.S. authorities.  All time, costs, consequences, losses, damages, including loss of sale/purchase of the cargo to be for the Owners' account.

**Clause 54     Stowage**

The Master shall supervise stowage of the cargo as well as instruct one of his Officers to supervise all loading, handling and discharge of the cargo and he is to furnish Charterers with stowage plans as well as tally ships and other documents customarily used.

**Clause 55     Cargo Gear**

Vessel's cargo gear and all other equipment shall comply with the vessel's class requirements in effect at all ports of call, canals and countries within trading limits as agreed in this Charter Party and Owners guarantee that vessel shall be at all times in possession of valid and up-to-date certificates of efficiency on board to comply with such regulations and/or requirements.  Gear certificates to be shown to Charterers or their Agents if required.

Owners guarantee vessel's crane capacity described are S.W.L. simultaneously.

## ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM
## CHARTER PARTY DATED 08th AUGUST 2007

cont'd.

All ships' cranes are in good working condition, however Charterers will allow ship deliver with crane no. 1,3,4 in working order and owners to fix crane no. 2 within 7 days after berthing 1st Chinese loading port, time and cost for fixing the crane are to be for Owners cost and Charterers could not put the ship off-hire if such repairing work do not interfere with the operation of Charterers cargo operation. However, if Charterers first loading port it not Chinese port, then vessel to have all crane in good order before delivery.

If stevedores, longshoremen or other workmen are not permitted to work due to failure of Master and/or Owners' Agents to comply with the aforementioned regulations or because vessel is not in possession of such valid and up-to-date certificates or efficiency, then Charterers may suspend hire for the actual time thereby lost.

Gear Breakdown
In the event of breakdown of crane or cranes, for a period by reason of disablement power, the hire to be reduced pro-rata for the period of such insufficiency in relation to the number of vessel's holds available.

If Charterers, in their option, continue work on hatch or hatches affected by breakdown by hiring shore appliances, Owners are to pay for shore appliances but in such case Charterers are to pay full hire for all time shore appliances are working.

Any stevedoring charges additionally accruing due to breakdown of vessel's equipment, including cost for standby of stevedores, to be for Owner's account but not to exceed more than one working shift the incident incurred. Further gangs to be employed by Charterers upon written Master's consent. Using of shore appliances always must get prior confirmation mutually agreed between the Owners and the Charterers.

The vessel is to have liberty to refuse to hire shore gear/crane in case the gear/derrick/crane can be sustituted by others.

## .Clause 56    Panama/Suez Canal Transit

The vessel shall be fitted for the Panama and Suez canal transit and be in possession of valid necessary certificates during the currency of this Charter in order to comply with the regulations and requirements of both canal authorities.

Any delay caused by non-compliance with the aforesaid or lack of proper documentation and/or certificates and/or equipment and fittings required to transit the Panama/Suez Canal will be considered off-hire and all expenses resulting from such delay, including bunkers consumed during that period will be for Owners' account.

## Clause 57    Grain Carriage

Owners confirm the vessel is a single-deck self-trimming bulk carrier fitted for the carriage of bulk grain in accordance with Solas 1974 and later amendments thereto without requiring any bagging, strapping or securing when loaded with a full (deadweight) cargo of heavy grain in bulk with ends untrimmed.

**ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM
CHARTER PARTY DATED 08th AUGUST 2007**

**cont'd**

Owners furthermore confirm that the vessel is suitable for discharge by grabs with holds clear of any fittings/superstructures, such as cardeck, curtain plates whatsoever and that the Charterers have the liberty to use bulldozers in the vessel's holds in accordance with vessel's tanktop strength.

Only rubber-wheel bulldozers allowed for discharging.

**Clause 58     Supercargoes/Port Captains**

The Charterers and/or their supercargo(es) shall have free and unlimited access to the whole vessel including bridge, holds and engine room and also to all vessel's tanks, including but not limited to bunkers, lubricating oil, sludge, ballast and freshwater tanks. Whenever required, the Master must bring the vessel into even trim to ensure correct bunker soundings.

**Clause 59     Deviation**

Should the vessel put back whilst on voyage by reason of an accident or a breakdown, or in the event of loss of time either in port or at sea or deviation upon the course of the voyage caused by sickness or accident to the crew or any other person on board the vessel (other than passengers and supercargo travelling by request of the Charterers) or by reason of refusal of the Master or crew to perform their duties, or by reason of salvage or sending and/or refugee or oil pollution, even if alleged, or capture/seizure, detention by any authority/legal process, the hire shall be suspended from the time of the inefficiency until vessel is again efficient in the same or equivalent pollution where deviation took place and voyage resumed therefrom and all expenses incurred, including bunkers consumed during period of suspended hire shall be for Owners' account.

**Clause 60     Holds on Delivery/Redelivery**

On arrival at the first load port vessel's holds to be clean swept, free of loose rust/rust scales and previous cargo residues to satisfaction of shippers independent surveyor at charterer's expense. Should the vessel fail to pass hold inspection at loadport the vessel to be placed off hire from time of failure until time vessel is fully accepted. However, if one or more of the vessel's cargo compartments commence loading before other cargo compartments are accepted then the vessel to be placed off hire pro-rata to the number of cargo compartments from time of failure of inspection until the compartment(s) is passed. Subsequent surveys to be for owners acct

**Clause 61     Intermediate Hold Cleaning**

Provided permitted by local regulations, crew to clean vessel's holds between cargoes, safety and time permitting, to the best of their ability as if vessel was trading for Owners' own account.  However, Owners not to be held responsible should vessel fail subsequent hold inspection due to hold cleanliness.  In the event vessel fails inspection the crew to clean again without further payment but vessel to remain on hire.

For cleaning operations actually performed by vessel's crew Charterers are to pay Owners lumpsumU.S.$3,500 (three thousand and five hundred in U.S. Dollar) for each occasion.

**ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM
CHARTER PARTY DATED 08th AUGUST 2007**

cont'd

Self-pilot / discharging cargo bonus / lashing / unlashing etc if any to be settled between Charterers and the master directly.

**Clause 62    Lay-Up**

Charterers have the option of laying up the vessel and in case that Charterers exercise this option then Charterers to clean the vessel's bottom at Charterers' time and expenses latest by redelivery of the ship to Owners.

**Clause 63    Return Insurance**

Charterers to have the benefit of any return insurance premium recoverable by Owners from their Underwriters not only by reason of the vessel being in port for a longer period of time.

**Clause 64    Smuggling**

Any delays, consequences, expenses and/or fines incurred because of smuggling shall be for Owners account if caused by the officers and/or crew and such period of detention to be considered as off-hire or shall be for Charterers' account if caused by Charterers' supercargo and/or their staff and/or agents.

**Clause 65    Admixture Clause**

Whilst Charterers have the option to load two or more cargoes in the same hold, Charterers to supply erect, dismantle and dispose of any and all separations at their risk and expense.  Any claims arising from contamination or admixture or sweat damage to cargo carried in the same hold to be for Charterers' account

**Clause 66    Joint On/Off Hire Survey**

A joint on-hire survey including bunkers and condition is to be held at delivery port and a joint off-hire survey including bunkers and condition is to be held at last discharge port prior delivery. The cost of these surveys to be equally shared between Owners and Charterers.

**Clause 67    Notices for Delivery**

Master is to give notice of vessel's delivery to Charterers, their representatives and their agents on fixing, together with estimated quantities of Intermediate Fuel Oil and Marine Diesel Oil remaining on board at time of delivery.

**Clause 68    Bunkering**

Charterers shall pay for value of bunkers on delivery along with first hire payment within 3 common banking days after delivery and receipt of owners hire invoice via fax or e-mail. Vessel to be delivered with about 900-1000 mt IFO and about 100 mt MDO and to be redelivered with about the same quantities as on delivery. Any difference between bunkers on delivery/redelivery to be settled immediately after vessel's redelivery. Prices to be the same both ends, USD 440 pmt IFO and USD 680 pmt for MDO.

## ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM
## CHARTER PARTY DATED 08th AUGUST 2007

cont'd

Charterers have the option to supply bunkers to the vessel prior to delivery provided same shall not interfere with Owners operations. Charterers to deduct value of bunkers prepaid on delivery from the last sufficient hire payment(s). Owners have the right to bunker vessel for their account during loading/discharging/bunkering provided same does not interfere with Charterers' operations and vessels cargo intake.

All fuels to be supplied during the period within the specifications as published in the int'l standard ISO8217:1996(e), intermediate fuel oil to be within RME25 specification and maximum 180CST viscosity, MGO within DMA specification

The Charterers shall have the liberty to bunker the vessel for their own account before delivery, provided same does not interfere with Owner's business.

Upon delivery or at first or subsequent port(s) after delivery and upon redelivery or at the last port(s) prior to redelivery, a joint bunker survey shall be made in order to establish bunker figures upon delivery respectively redelivery. Such figures shall be final and binding upon both parties.

All fuels to be supplied to the vessel should be complied with the requirements of MARPOL ANNEX VI Reg 14 & 16 especially sulphur content of fuels to be supplied should not exceed 4.5% m/m.

## Clause 69    Vessel sale

During the current of this C/P, owners have the right to sell the vessel only after 1st 6 months of performance in this Charter Party and owners to advise Charterers minimum 30 days in advance of any anticipated change. In case vessel has been sold, all terms/conditions of the governing Charter Party to be terminated 4 months after the date when vessel delivered to buyer/new owners but always not exceed the max period stipulated in this charter party.
Based on equal price/conditions, Charterers have the privilege right of decision to purchase the vessel or not.

## Clause 70    Protective Clauses

New Both-to-Blame Collision Clause and Conwartime 1993 War Risk Clause, U.S.A. and Canadian Clause Paramount, P and I Bunkering Clause and P and I Nuclear Clause, as attached, to be fully incorporated in the Charter Party and all Bills of Lading issued hereunder.

## Clause 71    Double Banking Clause

a.The Charterers shall have the right, when and where it is customary and safe for vessels of similar size and type to do so, to order the vessel to go, remain alongside another vessel or small or similar size and to order such vessel to come and remain
alongside at such safe dock, wharf, anchorage or other place for transhipment loading or discharging of cargo and/or bunkering.

### ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM
### CHARTER PARTY DATED 08th AUGUST 2007

cont'd.

b. The Charterers shall pay for and provide such assistance and equipment (including but not limited to fenders as may be required to enable any of the operations mentioned in this Clause safely to be completed and shall give the Owners such advance notice as they reasonably can of the details of any such operation. M.V. " Jia Hua " always to be considered the stationary, mother ship in any such double banking operation.

c. Without prejudice to the generality of the Charterers' rights under (a) and (b) it is expressly agreed that the Master shall have the right to refuse to allow the vessel to perform as provided in (a) and (b) if in his reasonable opinion it is not safe to do so and to break the double banking at any time if Master considers the safety of vessel crew or cargo endangered by such operations.

d. The Charterers shall further indemnify the Owners for any costs, including insurance premiums if levied, damage and liabilities resulting from such operation.  The vessel shall remain on hire for any time lost including periods for repairs as a result of such operations.

### Clause 72    Extension of Period

Should the vessel be off-hire during the currency of this Charter for any reason whatsoever the Charterers have the option of adding such time off-hire to the maximum period stipulated of this Charter Party.

### Clause 73    Grabs

Charterers to have the liberty to use vessel's grabs for discharge in all cargo holds. and such grabs always comply with vessel and/or gears/cranes spec. Grabs only use for loading/discharging bulk cargo such as iron ore(except lump),grain or similar cargo. Scrap, stone etc absoluted except.

If the vessel does not avail any grbs then Charterers to arrange for such grabs Comply with vessel's gears/cranes spec at their time and expense. Vessel's Holds/hatches to be clean of any fittings/superstructures such as cardeck, curtain plates whatsoever, free from all obstructions and suitable in every respect for grab discharge up to vessel's tank top strength.

Vessel has no obstruction in holds/tanktops and fitted for normal grab/bulldozer discharge subject to tanktop strength and Master's approval, W/C shall not be unreasonably withheld.

### Clause 74    Hatches

Opening and closing of hatches, removal of beans, wherever required to be performed by vessel's crew, provided local authorities permit it.  In addition crew to render any normally required assistance.

### Clause 75    Hatch Covers

Vessel's hatch covers are and are to remain during the currency of this Charter Party in proper condition, totally watertight otherwise any time lost and/or expenses incurred in the event of waterside workers or others at any time refusing to handle the vessel due to inadequacy of hatch covers to be for Owners' account.

7

## ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM
## CHARTER PARTY DATED 08th AUGUST 2007

**Clause 76    Dunnage/Shifting Boards/Cargo Batten**

Cargo battens, shifting boards and other dunnage material on board to be stowed out of the way of cargo spaces to Charterers' satisfaction prior to their accepting delivery of the vessel.

**Clause 77    I.T.F.**

Owners guarantee that the minimum terms and conditions on which crew are engaged are now and will be for the duration of this Charter covered by an I.T.F. Agreement or any other bona fide Trade Union Agreement accepted by the International Transport Workers' Federation or employed under terms and conditions local Unions/Labour Organisations affiliated with I.T.F.  If the vessel does not meet these requirements, the vessel is to be placed off-hire until such requirements are fully complied with.

**Clause 78    Customs Fines**

Owners to be responsible for customs fines and to put up security in case of necessity if Owner's vessel is proven responsible and if so demanded by local authorities for Owner's matter unless fines imposed to the vessel due to cargoes and/or Charterers and/or sub-Charterers and/or their agents omissions or faults in which case any expenses including security if necessary to be provided and paid by Charterers and vessel to remain fully on hire. Any dispute as to ultimate liability arising insofar to be decided according to the terms and conditions of this Charter Party.

Owners to be responsible for any fines whatsoever in the event of smuggling acts by their own officers and/or crew, Owner's passengers and/or stowaways and Owners to remain responsible for detention of the vessel due to smuggling and any other expenses arising from these acts. Charterers to be similarly responsible in respect of Charterer's representatives and/or servants.

**Clause 79    Certificates**

Vessel to have on board and up-to-date all of the certificates required and necessary for the intended trade and to comply with all of the regulations of the countries/ports of call under this Charter.  In case vessel/Owners do not comply with the aforementioned then any time lost and any and all expenses directly related to be fully for Owners' account.

**Clause 80    Oil Pollution Certificate**

Owners to supply Charterers with guarantee that oil pollution certificate is issued.

**Clause 81    International Tonnage Certificate**

Upon delivery, the vessel shall have on board an International Tonnage Certificate valid for the duration of this Charter Party and such tonnage certificate shall be acceptable by the local authorities at the countries of call within the trading limits of this Charter Party.

Should such certificates not be acceptable to the local authorities, any time lost and all extra expenses for issuing an acceptable certificate are to be for the Owners' account.

## ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM
## CHARTER PARTY DATED 08th AUGUST 2007

**Clause 82     Bills of Lading**

Master and Owners to authorise Charterers and/or their agent to sign original Bills of Lading on behalf of Master strictly in accordance with mate's receipt without Prejudice to this charter party, and charterers and /or their agents have option to issue Clean bills/lading provide charterers LOI as per owners P&I club format signed by charters only.

Should original Bills of Lading not arrive at discharge port in time, then Owners agree to release entire cargo without presentation of original Bills of Lading against an LOI to be given by Charterers. LOI asper Owners' standard PANDI Club wording to be issued and signed by Charterers only and faxed to Owners 2 working days prior to commencement of discharge.

**Clause 83     Sanitary**

It is understood that if necessary, vessel will comply with any safety/health regulations and/or requirements in effect at ports of loading and/or discharging, a particular reference is the United States Department of Labour Safety and Health Regulations set forth in Part III of the Federal Register.

Although other provisions of this Charter make it the responsibility of the Owners, it is agreed that should the vessel not meet Safety/Health rules and regulations, Owners will take immediate corrective measures and any stevedore standby time and other expenses involved including off hire, will be for the Owners' account.

**Clause 84     Nuclear Materials**

Notwithstanding any other provisions of this Charter, it is agreed that nuclear fuel, nuclear materials or radioactive products or waste are specifically excluded from the cargo permitted to be loaded or carried under this Charter Party.

**Clause 85     Speed/Consumption**

a) Charterers option to supply a weather routing company to Master during voyages specified by Charterers. The Master to comply with the reporting procedures of the routing service. The vessel shall be capable at all times during the currency of this Charter Party of steaming at about 12.5 knots laden. For the purpose of this Charter Party "good weather condition" is to be defined as weather conditions in wind speeds not exceeding Beaufort Force 4 Douglas Sea State 3. Evidence of weather conditions to be taken from ship's deck logs and Independent Weather Bureau Reports.
b) Vessel's further details as per the attached "Description Clause" and Charterers' Questionnaire duly filled in by Owners are fully incorporated and form a part of this Charter Party.

**Clause 86     Services**

Vessel to work night and day if required by Charterers and all winches and/or cranes to be at Charterers' disposal during loading and discharging. Hire also to include, but not limited to, the following services:

### ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM
### CHARTER PARTY DATED 08th AUGUST 2007

cont'd.

a. Raising and lowering and rigging cranes and/or gangways in preparation for loading and discharging.

b. Opening and closing of hatches in connection with loading and discharging, local regulations permitting. Otherwise shore labour to be employed at Charterers' time and expense.

c. Closing and opening of hatches in the event of weather which may adversely affection condition of cargo carried on board during loading and discharging, local regulations permitting.

d. Customary supervision of loading and discharging. Master to remain responsible for the stowage of the vessel insofar as this concerns the trim and/or stability of the vessel.

e. Maintaining sufficient steam/electric power in good order whilst loading and discharging.

f. Shifting vessel during loading and discharging and shifting berth.

g. Docking and undocking

h. Bunkering

i. Weather permitting, Officers and crew to shape up vessel's hatches and cranes as much as possible prior to arrival at loading and/or discharging ports or places so as to immediately commence loading and/or discharging operations.

## Clause 87    Hire/General Average

Hire not to contribute to General Average.

## Clause 88    Cargo Exclusions

Excluding all cargoes listed in appendix b of bc code, all flammable, combustible, njurious, corrosive and dangerous goods as defined by imo, calcium carbide, calcium hydrochlorite, calcium hypochlorite, wheat- flour, aggregates, resins, bombs, bones, prefabricated houses+ mobile buildings, ferro silicon including silicon manganese, organic peroxides, creosoted goods, naphta, tar, pitch, asphalt and their products in bulk, arms, explosives including blasting and detonator caps, nuclear products, nuclear fuels or radio active material or waste, radioactive products and waste, motorblocks shavings and turnings, petroleum or its products including motor spirit, pond coal, denvo coal, petroleum coke, hides, wet hides, seed cake in any form, manioc and/or manioc pellets, black powder, turpentine, logs of any kind, mahogany logs, livestock, acids, charcoal, cement, asbestos in any form, sponge iron, pre redused iron ore pellets, dri pellets, directly reduced iron, dri pellets, briquettes, hbi, ammonium nitrate, nitrate of ammonia, bulk ammonium sulphate, potassium chloride, concentrates, borax, quebraco extract, anthracite,

## ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM
## CHARTER PARTY DATED 08th AUGUST 2007

cont'd.

### Dirty cargoes allowed
Maximum of 2 (two) dirty cargoes out of sulphur, salt, cement clinker, HMS 1+2, coal and petcoke allowed during this period, but Charterers option to load only 1 (one) shipment of coal or petcoke, i.e. if Charterers load one shipment of coal, then no petcoke was allow anymore and if Charterers load one shipment of petcoke, then no coal was allow anymore. But dirty cargo could not be loaded in the last shipment of this period.

It is understood that dirty cargoes not to be loaded more than 2 times consecutively, and same not to be last cargo prior redelivery, with dirty cargoes to be:
"sulphur salt, cement clinker, scrap if approved by owners"

### Petcoke
A) Petroleum coke to be carried is limited to the type of non hazardous/non dangerous green delayed type and/or calcined type.

B) If Charterers exercise such option, Charterers undertake to use holds as less as possible, provided vessel's stability/trim and stress permit.

C) Such cargo to be loaded/stowed/trimmed/discharged strictly according to latest imo and/or any other local regulations/rules applicable for such cargo.

D) Should any additional/special washdown of holds before loading be required, Charterers are to arrange same at their time/expense.

E) Any extra expenses resulting therefrom/incurred thereby (such as hold cleaning to master's satisfaction/hold surveys etc) and/or any detention through any of the above causes are for Charterers' account.

F) Charterers should pay another usd 3,000 (three thousand) to Owners if loading this kind of cargo.

### Salt & Sulphur
A) Charterers undertake to use holds as less as possible, provided vessels stability trim and stress permitting.

B) before loading, all holds assigned for sulphur to be lime-washed by charterers at their time/expense/risk to the satisfaction of master and independent surveyors appointed by charterers at their time and expense.
C) cargo to be loaded/stowed/trimmed/discharged strictly according to latest imo and/or any other latest regulations/rules applicable to such cargo.

D) all freshwater used for irrigation onto sulphur during loading voyage/discharging to be for charterers account.

E) after discharge charterers to supply sufficient fresh water at their expense for washing down of all holds.

F) deleted

11

## ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM
## CHARTER PARTY DATED 08th AUGUST 2007

**cont'd.**

G) any directly related extra expenses resulting therefrom/incurred thereby (such as hold cleaning to masters satisfaction/hold survey etc.) And any detention through above causes to be for charterers account.

H) charterers are allowed to use ships crew to perform lime washing and removal of same and repainting as necessary against paying us$800, (resp usd 1000 in case this is the last cargo) per hold besides normal intermediate hold cleaning, but always subject to prior consent of master/crew and local regulations permitting, and all time used to be for charterers account. Owners/master are not held responsible for passing hold cleanliness for loading next cargo and for any consequence whatsoever caused due to such arrangement.

### Scrap
A) The scrap mentioned herein only limited to hms 1+2 and/or shredded scrap specifically excluding motor blocks and turnings and also metal borings and cuttings.

B) Charterers undertake that loading of first layer of scrap not to be released until lowered as close as possible to tanktop and not to be dumped/ dropped during loading. First layer of scrap to be loaded at height and to be evenly stowed/ trimmed to satisfaction of master before loading balance of cargo.

C) Charterers undertake to supply on board at their expense, dunnages and/or other materials which are necessary and reasonable to provide safe protection from damage by loading scrap.

D) Prior to loading scrap, hold condition survey to be conducted by an independent surveyor joint appointed by charterers and Owners in Charterers time and costs to be for Charterers account, and same to be done immediately after completion of discharge.

E) In case of any damage to the vessels Australian hold ladders and any other parts/places of the vessel caused by loading such scrap cargo (except for damage to hold plate which to be considered fair wear and tear), Charterers to be responsible for upgrading/repairs to bring Australian hold ladders and other parts/places to same condition as prior to loading scrap before commencement of next voyage in case needed.

F) Any directly related extra expenses resulting there from/incurred thereby (such as hold cleaning to masters satisfaction/hold survey etc.) And any detention through any of above causes to be for charterers account.

Charterers are allowed to load harmless ground granulanted blast furnace slag under this Charter Party provided same is in accordance with IMO and/or local regulations.

### Clause 89    Trading Exclusions

Trading always within IWL, ice free ports, vessel neither to force ice nor to follow icebreaker(s), trading always excluding war and war like zones, Iraq, N. Korea, Israel and Israelian controlled areas, Yemen and people's republic of Yemen (north and south Yemen), Eritrea, Liberia, Djibouti, Somalia, Cyprus, Nigeria, Angola (including Cabinda), Sierra Leone, png, Solomon, Lebanon, Albania, Ethiopia, Syria, Haiti, Cyprus, former

## ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM
## CHARTER PARTY DATED 08th AUGUST 2007

cont'd.

Yugoslavia, Ivory Coast, Abkhazia, Congo, Democratic Republic of Congo (former Zaire), Cuba.

No direct trading directly between China mainland and Taiwan, no trading CIS Pacific ports during January and February every year, no cargo to be loaded for final destination where U.N sanctions and / or embargo exists. In case the political situation in the countries currently allowed to trade in this charter party deteriorate to the extent that both parties agreed to exclude same from trading limites.

Charterers option to break IWL sub owners and Owners underwriters approval each call in advance and any extra insurance premium from breaking IWL to be for charterers account. Subject to owners to provide the relevant original invoices issued by owners underwriters but always not exceeding Lloyds London association.

If vessel called Cis Pacific ports during the charter party, owners not to be responsible for any restrictions and rejection by any authorities of countries on vessel's trading during the currency of this charter party due to having called Cis Pacific ports as aforementioned.

**Clause 90    Agency Appointment**

Owners to appoint their own Agents where necessary, to attend to all Owners' matters such as deliver, redelivery, general average, drydocking and repair. Charterers agree to have their appointed Agents attend to routine ship's husbandry with Owners paying Charterers' agents actual expenses incurred for such services in accordance with Agents' tariff. However, it is understood that Owners will not be charged with any extra/additional agency fee.

**Clause 91    Quarantine**

Normal quarantine time and expenses to enter ports to be for Charterers' account but any time of detention and expenses for quarantine due to pestilence, illness etc. of Master, Officers and crew to be for Owners' account  Vessel to prepare for passing radio pratique where permitted.

**Clause 92    DELETE**

**Clause 93    Charterers' Equipment**

The Master is to keep a record of all Charterers' gear, equipment, dunnage and/or stores supplied to the vessel and to do utmost so as to maintain same in good condition. Such gear, equipment, dunnage and/or stores to be returned to Charterers prior to redelivery of vessel to Owners, or if requested by Charterers at any time during the period of the charter in like good order and condition as supplied (fair wear and tear excepted).

## ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM
## CHARTER PARTY DATED 08th AUGUST 2007

**Clause 94    Padeyes**

Charterers' option to weld padeyes and/or other lashing/securing devices/points on deck/hold (but not over epoxy painted areas or unsafe areas such as bunker tank) under Master's satisfaction/supervision at Charterers' time/expense and same to be removed prior vessel's redelivery but Charterers to have the option to redeliver the vessel without removing same by paying U.S.$10 (Ten Dollars) per padeye.

**Clause 95    P & I Club/Cargo Claims**

Owners guarantee that the vessel is entered and shall remain entered in a Protection and Indemnity Association for the duration of this Charter Party. Entry shall include but not be limited to fully enter cargo claims of any nature.

Any liability to third parties for cargo claims shall be borne by Owners/ Timecharterers in accordance with the Inter-Club NYPE Agreement as amended 1996 or thereafter. The party having paid the claim(s) shall submit some to the other party with supporting documents as soon as possible and neither party shall between themselves refer to the two (2) years time limit as defence.

Charterers P&I club: Reverting

**Clause 96    Deck Cargo**

Charters have option to load intended cargo on deck/hatch over at charterers' time /risk /expenses and risk in accordance wit vessel's deck/hatch cover strength and vessel's stability at master's satisfaction which, however, not to be unreasonable withheld. Any risk, claims costs and consequences arising from loading cargo on deck/hatch covers to be for charterers account. Bill(s) of lading issued covering such cargo shall be claused as followings: "Shipped on deck at charterers', shippers' and receivers' risk, expenses and responsibility, without liability on the part of the vessel or her owners for any loss , damage, expenses or delay howsoever caused."

**Clause 97    Pre-load Survey**

Pre-load Survey/Inspection should be applied for any sensitive cargo, the surveyor should be appointed by Owners' P&I Club and the expenses should be half/half contributed by the Charterers and the Owners.

**Clause 98    Arbitration**

All disputes arising out of this contract which cannot be amicably resolved shall be referred to arbitration in London. Unless the parties agree upon a sole arbitrator the reference shall be in 2 (two) arbitrators, one to be appointed by each of the parties.
The arbitrators shall be commercial shipping men, and the umpire, if appointed, shall be legal shipping men and shall be members of The London Maritime Arbitrators' Association or otherwise qualified by experience to deal with commercial shipping disputes. The contract is governed by English law and there shall apply to arbitration proceedings under this clause the terms of the London Maritime Arbitrators' current at the time when arbitration proceedings are commercial. It is further understood that the 7 (seven) days limit for appointment of the arbitrator, either originally or by substitution, shall be changed to 30 (thirty) days.

**ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM**
**CHARTER PARTY DATED 08th AUGUST 2007**

cont'd.

In the event the amount of claim and counter claim does not exceed U.S.$50,000 (Fifty Thousand Dollars) the parties agree to refer any dispute to a sole arbitrator in accordance with the small Claims Procedure of the London Maritime Arbitrators' Association.

**Clause 99    Dry-Docking**

No dry-docking allowed during the period of this time charter except emergency

**Clause 100    Stevedore/Tallying**

Stevedores and tallymen although arranged and paid for by the Charterers/Receivers in loading and discharging subject to the orders and directions of the Master.

**Clause 101    Stevedore Damage**

Where possible at loading and discharging ports, stevedore damage, if any to be settled directly between Owners and stevedores. Charterers only to be responsible for stevedore damages, provided such damages during the currency of this Charter Party shall be notified by Master to responsible stevedores and Charterers or their agents in writing by telex or by fax within twenty four hours after occurrence or latest before sailing from port where damages occurred, except in the case of hidden damages which to be reported as soon as discovered latest upon completion of discharge and therefore cannot be countersigned.

Master to cooperate with Charterers or their Agents in giving prompt notice of claim in writing to party causing damages and also endeavour to obtain written acknowledgement of the damage and liability from stevedores or other persons concerned.

Stevedore damage affecting vessel's class/seaworthiness to be reported by the Charterers before sailing from the port. Charterers can redeliver the vessel without repairing any stevedore damage incurred during the currency of this Charter Party, provided this does not affect seaworthiness but Charterers undertake to reimburse expenses to Owners against submission of actual repair bill by the dockyard.

**Clause 102    Hose Testing**

Charterers/shippers have option to conduct out hose test, for water tightness of hatch covers, by independent surveyors. Master to fully co-operate independent surveyors and provide all assistance that be required. In case vessel fails hose test, Owners to carry out necessary repairs to the satisfaction of independent surveyors. Vessel to be off-hired from time of rejection to passing reinspection.

All cost/expenses for subsequent survey(s) including surveyors fees to be for Owners account

**Clause 103    Watchmen/Garbage Removal**

Gangway watchmen if compulsory to be for Charterers' account. Garbage removal to be for Owners' account. Garbage removal, if compulsory and if not ordered by the vessel/Owners to be for Charterers' account

15

### ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM
### CHARTER PARTY DATED 08th AUGUST 2007

**Clause 104   Oil Pollution**

Owners warrant to provide for the vessel and maintain at their expense and carry onboard the vessel a valid U.S. Coast Guard Certificate of Financial Responsibility as required under the U.S. Federal Water Quality Act and amendments thereto. Owners also warrant to have secured correct certificates for other countries where similar guarantees are required. In no case shall the Charterers be liable for any damages as a result of the Owners' failure to obtain the aforementioned certificates or the Owners' non-compliance with present or future water pollution legislation enacted by individual U.S. States or other countries. Time lost by non-compliance to be considered as off-hire and Owners to hold Charterers harmless against any consequential loss, damage or expense.

**Clause 105   Itinerary**

Charterers undertake to keep Owners informed during the period as regards to the itinerary of the vessel and names of their Agents at ports of call.

**Clause 106   Tracking**

Charterers may from time to time of fixing until completion of the charter period employ an Inmarsat C tracking system on the vessel provided same is not interfering with vessel's navigational system. All registration and communication costs relating to this tracking system will be for Charterers' account. Charterers will advise when the system is operative and confirm termination on completion of the charger. Owners to supply the following information, which will form part of this clause:

Inmarsat C Number (9 digits beginning with 4):

Manufacturer, make etc:

Model Number:Terminal S/W version of known

**Clause 107   Weather Service**

Charterers may supply oceanroutes' advice to the master during the voyages specified by the Charterers. The master to comply with the reporting procedure of the routing service. Evidence of weather conditions to be taken from the vessel's deck logs and independent weather bureau reports. in the event of a consistent discrepancy between deck logs and independent weather bureau reports, then independent weather bureau reports to be taken as ruling in the event of a dispute over an apparent breach of the speed and consumption warranty in this charter party, the performance data supplied by oceanroutes shall be taken as binding on both parties.

**Clause 108   English Law**

The Charter Party shall be governed and construed in accordance with English Law. Arbitration in London and English Law to be applied.

**Clause 109   River Navigation**

Master/vessel has the liberty to burn Marine Diesel Oil for main engine when manoeuvring in shallow/narrow waters/canals/rivers and in or out of ports.

16

### ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM
### CHARTER PARTY DATED 08th AUGUST 2007

**Clause 110    Due Diligence**

Whilst on voyage Master/crew to act with due diligence in inspecting/preserving the cargo on board taking any possible measures to avoid damages.

**Clause 111    Boycott**

Should the vessel be boycotted, picketed, blacklisted or similar incident at any port or place by shore and/or port labours and/or tugboats and/or pilots, or by government and/or any authority, but reason of the vessel's flag/registry/manning or ownership or terms and conditions on which members of the Officers/crew are employed, or by reason of trading of this vessel or other vessel under the same ownership, management or control or by reason of the vessel's construction and/or her cargo gear and/or her fitting and/or her other equipment, all consequences and any extra expenses, incurred therefrom to be for Owners' account and the Charterers are not entitled to place the vessel off-hire for any time lost by such reasons, and Owners to remain responsible for all directly related costs.

**Clause 112    Taxes**

Any dues or taxes on vessel, cargo and/or freight and/or hire to be for Charterers' account. However any taxes on Charter hire or the vessel, levied by country of vessel's flag and registry and/or Owners' principal place of business to be for Owners' account.

**Clause 113    Capture, Arrest, Detention**

Should the vessel be captured or seized or arrested by any authority or by any legal process during the currency of this Charter Party, the payment of hire shall be suspended until the time of her release, unless such capture or seizure or detention or arrest is occasioned by any personal act or omission or default of the Charterers or their Agents, any extra expenses incurred by and/or during the above capture or seizure or detention or arrest shall be for Owners' account.

**Clause 114    Liens**

DELETE

**Clause 115**

DELETE

**Clause 116    Hire Calculation**

For the purpose of computing hire payments, the time for delivery/redelivery shall be adjusted to GMT.

**Clause 117  BIMCO  U.S.  Customs  Advance  Notification/AMS  Clause  for  Time
                 Charter Parties**

(a) If the Vessel loads or carries cargo destined for the US or passing through US ports in transit, the Owners shall comply with the current US Customs regulations (19 CFR 4.7) or any subsequent amendments thereto and shall undertake the role of carrier for the purposes of such regulations and shall, in their own name, time and expense:

## ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM
## CHARTER PARTY DATED 08th AUGUST 2007

cont'd.

    i)      Have in place a SCAC (Standard Carrier Alpha Code);
    ii)     Have in place an ICB (International Carrier Bond); and
    iii)    Submit a cargo declaration by AMS (Automated Manifest System) to the US Customs.

(b) The Charterers shall provide all necessary information to the Owners and/or their agents to enable the Owners to submit a timely and accurate cargo declaration. The Charterers shall assume liability for and shall indemnify, defend and hold harmless the Owners against any loss and/or damage whatsoever (including consequential loss and/or damage) and/or any expenses, fines, penalties and all other claims of whatsoever nature, including but not limited to legal costs, arising from the Charterers' failure to comply with any of the provisions of this sub-clause. Should such failure result in any delay then, notwithstanding any provision in this Charter Party to the contrary, all time used or lost shall count as laytime or, if the Vessel is already on demurrage, time on demurrage.

(c) The Owners shall assume liability for and shall indemnify, defend and hold harmless the Charterers against any loss and/or damage whatsoever (including consequential loss and/or damage) and any expenses, fines, penalties and all other claims of whatsoever nature, including but not limited to legal costs, arising from the Owners' failure to comply with any of the provisions of sub-clause (a). Should such failure result in any delay then, notwithstanding any provision in this Charter Party to the contrary, all time used or lost shall not count as laytime or, if the Vessel is already on demurrage, time on demurrage.

(d) The assumption of the role of carrier by the Owners pursuant to this Clause and for the purpose of the US Customs Regulations (19 CFR 4.7) shall be without prejudice to the identity of carrier under any bill of lading, other contract, law or regulation.

## Clause 118   BIMCO Standard ISM Clause

From the date of coming into force of the International Safety Management (ISM) Code in relation to the Vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the Vessel and 'the Company' (as defined by the ISM Code) shall comply with the requirements of the ISM Code.

Upon request the Owners shall provide a copy of the relevant Document of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers.

Except as otherwise provided in this Charter Party, loss, damage, expense or delay caused by failure on the part of the Owners or 'the Company' to comply with the ISM Code shall be for the Owners' account.

## Clause 119   C/V/E EXPENSES

Charterers to pay Owners cables/representation/communication/entertainment US$1,100.00 per month or pro rata.

## ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM
## CHARTER PARTY DATED 08th AUGUST 2007

**Clause 120**

Charterers have the option to cut holes in vessel`s hatchcovers for loading bulk on following conditions:

(1) all cutting and restoring of the holes to be fully supervised / attended/ approved by vessel`s classification surveyor with written documents.

(2) holes not to be cut within the same frame space with the existing grain feeding holes and to be cut at the suitable place of hatchvover in accordance with vessel`s builder`s specification. Welt protection to bilge well of all holds is strictly necessary to keep smooth suction while discharging hold washing water by using gum tapes (plaster) or so. when restoring holes, chill plates or similar material deemed necessary by master/`surveyor to be fitted for complete welding in order to reinstate the hatchcovers back to their original condition.

(3) after completion of restoring holes, owners` option to have hose test carried out in presence with vessel`s classification surveyor and test result should be upto his satisfaction, otherwise charterers have obligation to rectify the situation until and when satisfied by the vessel`s classification surveyors.

(4) all time for preparing cutting and restoring upto classification surveyor`s satisfaction as well as all expenses including classification surveyor`s fees and expenses shall be for charterers` account.

(5) slag cargo not to be destinated for discharging at Chinese port(s)

**Clause 121**

If required by Charterers', vessel's crew to seal vessel's hatches with marine tape (ramneck or similar) which to be supplied and paid for by Charterers, vessel to remain on hire.

*************************

**Owners**                                              **Charterers**

## ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM
## CHARTER PARTY DATED 08th AUGUST 2007

### GENERAL PARAMOUNT CLAUSE

This Bill of Lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, except that if this Bill of Lading is issued at a place where any other Act, ordinance or legislation gives statutory effect to the International Convention for the Unification of Certain Rules relating to Bills of Lading at Brussels, August 1924, then this Bill of Lading shall have effect subject to the provisions of such Act, ordinance or legislation. The applicable Act, ordinance or legislation (hereinafter called the "Act") shall be deemed to be incorporated herein and nothing herein contained shall be deemed surrender by the Carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any terms of this Bill of Lading be repugnant to the Act to any extent, such terms shall be void to the extent no further. Nothing in this Bill of Lading shall operate to limit or deprive the Carrier of any statutory protection or exemption from, or limitation of liability.

### P & I BUNKERING CLAUSE

The vessel in addition to all other liberties shall have liberty as part of the contract voyage and at any stage thereof to proceed to any port or ports whatsoever whether such ports are on or off the direct and/or customary route or routes to the ports of loading or discharge named in this Charter and there take oil bunkers in any quantity in the discretion of owners even to the full capacity of fuel tanks, deep tanks, and any other compartment in which oil can be carried whether such amount is or is not required for the chartered voyage.

### U.S.A. CLAUSE PARAMOUNT

This Bill of Lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States approved April 16, 1936 which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. The provisions stated in said Act shall (except as may be otherwise specifically provided herein) govern before the goods are loaded on and after they are discharged from the ship and throughout the entire time the goods are in the custody of the carrier. The carrier shall not be liable in any capacity whatsoever for any delay, non-delivery or mis-delivery, or loss of or damage to the goods occurring while the goods are not in the actual custody of the carrier.

The carrier shall not be liable in any capacity whatsoever for any delay, non-delivery or mis-delivery or loss of or damage to the goods occurring while the goods are not in the actual custody of this carrier.

## ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM
## CHARTER PARTY DATED 08th AUGUST 2007

### CANADIAN CLAUSE PARAMOUNT

The terms, provisions and conditions of the Canadian Water Carriage of Goods Act 1936 and of the rules comprising the schedule thereto are, so far as applicable, to govern the contract contained in this Bill of Lading and the Shipowners are to be entitled to the benefit of all privileges, rights and immunites contained in such Act and in the schedule thereto as if the same were herein specifically set out.  If anything herein contained be inconsistent with the said provisions, it shall to the extent of such inconsistency and no further be null and void.

The Carrier shall be under no responsibility whatsoever for loss of damage arising prior to the loading on and/or subsequent to the discharge from the Carrier's ship.

### CONWARTIME 1993

1.      For the purpose of this Clause, the words:

        (a)    "Owners" shall include the shipowners, bareboat Charterers, disponent owners, managers or other operators who are charged with the management of the vessel, and the Master; and

        (b)    "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the vessel, her cargo, crew or other persons on board the vessel.

2.      The vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any waterway or canal, where it appears that the vessel, her cargo, crew or other persons on board the vessel, in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks. Should the vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

3.      The vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain flags or Ownership, or against certain cargoes or crews otherwise howsoever, or to proceed to an area where she shall be subject or is likely to be subject to a belligerent's right of search and/or confiscation.

4.      (a)      The Owners may effect war risks insurance in respect of Hull and Machinery of the vessel and their other interests (including, but not limited to, loss of earnings and detention, the crew and their Protection and Indemnity Risks) and the premiums and/or calls thereof shall be for their account.

21

## ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM
## CHARTER PARTY DATED 08th AUGUST 2007

(b)    If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the vessel is within, or is due to enter and remain within, any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then such premiums and/or calls shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due.

5.    If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then such bonus or additional wages shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due.

6.    The vessel shall have liberty:

(a)    to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the government of the nation under whose flag the vessel sails, or other government to whose laws the Owners are subject, or any other government, body or group whatsoever acting with the power to compel compliance with their orders or directions;

(b)    to comply with the order, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(c)    to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(d)    to divert and discharge at any other port any cargo or part thereof which may render the vessel liable to confiscation as a contraband carrier;

(e)    to divert and call at any other port to change the crew or any part thereof or other persons on board the vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

7.    If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging port, or any one or more of them, they shall immediately inform the Charterers. No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

## ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM
## CHARTER PARTY DATED 08th AUGUST 2007

8.     If in compliance with any of the provisions of sub-clauses (2) to (7) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfilment of this Charter Party.

## NEW BOTH-TO-BLAME COLLISION CLAUSE

If the liability for any collision in which the vessel is involved while performing this Charter Party fails to be determined in accordance with the laws of the United States of America, the following clause shall apply:

"If the ship comes into collision with another ship as result of the negligence of the other ship and any act, neglect or default of the master, mariner, pilot or the servants of the carrier in the navigation or in the management of the ship, the owners of the goods carried hereunder will indemnify the carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the owners of the said goods, paid or payable by the other non-carrying ship or her owners to the owners of the said goods and set off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying ship or carrier.

The foregoing provisions shall also apply where the Owners, Operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact."

## BIMCO ISPS CLAUSE FOR TIME CHARTER PARTIES

(a) (i)  From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the Vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the Vessel and "the Company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).

(ii)  Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.

(b) (i)  The Charterers shall provide the CSO and the Ship Security Officer (SSO)/ Master with their full style contact details and, where sub-letting is permitted under the terms of this Charter Party, shall ensure that the contact details of all sub-charterers are likewise provided to the CSO and the SSO/Master. Furthermore, the Charterers shall ensure that all sub-charter parties they enter into during the period of this Charter Party contain the following provision.

23

## ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM
## CHARTER PARTY DATED 08th AUGUST 2007

"The Charterers shall provide the Owners with their full style contact details and, where sub-letting is permitted under the terms of the charter party shall ensure that the contact details of all sub-charterers are likewise provided to the Owners".

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account.

(c) Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(d) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

## BILL OF LADING WEIGHTS CLAUSE

Bill of Lading weights to be determined by vessel draft survey or shore scale weights, at Charterers' option. Vessel to be fit for draft survey. Master to cooperate fully and provide, if required, all scales, plans and data required by the surveyor. Vessel not to arrive with a trim exceeding her ballast tank trim correction tables provided not any airdraft restriction at load port. Plimsoll mark amidships, decline and draft marks, should be cut or welded on the steel plating on both port and starboard sides, forward, aft and amidships. In the event Master determines that the vessel has loaded less than the quantity stated by the supplier/surveyor, Master to immediately notify suppliers and the Charterers of the discrepancy and to issue a formal protest supporting his position. In the event a survey taken on arrival/departure at the discharge port shows a quantity less than the Bill of Lading quantity, the Master to refuse to sign any survey or document and Master to immediately issue protest supporting his position. Vessel to remain on hire in case delays occurred which proved to be through not responsibility of Owners/Master, otherwise vessel to be off-hire.

### ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM
### CHARTER PARTY DATED 08th AUGUST 2007

PARTICULARS & T/C DESCRIPTION

M/V JIA HUA ( EX  "BAO CHANG MEN")
EX.SEA SWAN
ST.VINCENT BLT 1984.10  LOA/BM/DEPTH 188.4/31.01/15.1M
DWT 42,310MT ON 10.763M SSW  GRT/NRT 24,614/13,192T
WINTER/DRAFT :41,182MT/10.539M
FRESH/DRAFT :42,309MT/11.012M
T.F/DRAFT :43,419MT/11.236M
TROPICAL/DRAFT:43,443MT/10.987M

TPC:ABT 50.4T (LADEN)
PANAMA GRT/NRT 25,456/19,328T
SUEZ GRT/NRT 24,442.81/21,401.64T
COAMING HEIGHT:2M
KEEL TO MAST :46.6M
KEEL TO HATCH :17.41M
FORE H1 TO AFT H 129.6M
BOW TO FORE H1 20.4M
STERN TO AFT LAST H 38.4M
DECK TO PEDESTAL :4.0M

| WL TO HATCH COAMING : | LADEN | HEAVY BALLAST | LIGHT BALLAST | LIGHT |
|---|---|---|---|---|
| FORE | 6.65 | 9.67 | 12.92 | 16.78 |
| MID | 6.65 | 9.67 | 11.93 | 15.42 |
| AFT | 6.65 | 9.67 | 10.95 | 14.06 |

STRENGTH OF T.TOP/MAIN DECK/HATCH :20/2.7/1.75T

5HH SDBC GRAIN/BALE  49,800.4/48,572.7CBM

HATCH SIZE: NO.1 - 14.4X13.6M    NO.2/5 - 19.2 X 13.6M

| HOLD SIZE : | L X B X H |
|---|---|
| NO.1 | 24.6X30.4X13.91M |
| NO.2 | 28.8X30.4X13.91M |
| NO.3 | 28.8X30.4X13.91M |
| NO.4 | 28.8X30.4X13.91M |
| NO.5 | 28.8X30.4X13.91M |

TTOP FLAT DIMENSION  :

| | L X B(FWD/MID/AFT) |
|---|---|
| no.1 | 24.2X6.9/16.2/21M |
| no.2 | 27.6X21.9/22.8/22.8M |
| no.3 | 27.6X22.8/22.8/22.8M |
| no.4 | 27.6X22.8/22.822.8M |
| no.5 | 27.6X22.8/22.8/13.5M |

GRAIN/BALE CAPA OF EACH HOLD :

| | GRAIN / BALE |
|---|---|
| NO.1 | 7,831.90/7,638.80CBM |
| NO.2 | 10,596.20/10,335.00CBM |
| NO.3 | 10,614.50/10,352.80CBM |
| NO.4 | 10,636.10/10,373.90CBM |
| NO.5 | 10,121.70/9,872.20CBM |

--------------------------------------------------------------

| TTL | 49,800.40/48,572.70CBM |
|---|---|

**ADDITIONAL CLAUSES TO MV JIA HUA/HOLCIM
CHARTER PARTY DATED 08th AUGUST 2007**

CRANES 4X25T (OUTREACH BEYOND SHIP'S RAIL :6.5M)
GEARS:
SLEWING ANGLE  360DEG
MIN SLEWING RADIUS :4.5
MAX SLEWING RADIUS : 22
HOISTING SPEED : 5/15/25 @ 36/18/12
SLEWING SPEED :0.75
LUFFING SPEED :36SEC
MAX OUTREACH :6.5M


GRABS: 4 X 5/10 CBM
HCOVER :MACGREGOR SIDE ROLLING - HYDRAULIC


BALLAST TANK CAPA : 15,665.5MT   DEBALLAST CAPA FR B'TANK :800/900CBM
BALLAST HOLD CAPA :10,879.9MT  DEBALLAST CAPA FR B'HOLD :800CBM
BUNKER CAPA :FO/1998.3CBM   DO/253.9CBM
F/WATER :352MT
CONSTANT : ABT 500MT EXCL F/WATER
FIXED STANCHIONS/HEIGHT : 20/1.5

DECK SPACE W/O OBSTACLES :N
SUITABLE FR GRAB DISCHG:Y
VENTILATION : NATURAL
HOPPERED TANKTOP:Y
TOPSIDE TANKS :Y
CO2 IN HOLDS :N
AWWF LADDER:Y
GRAIN:Y

CALL SIGN :J8B3019
CLASS:CCS
OFFICIAL NO. : 9491
LLOYD'S NO. :8315231
DOC NO.:OB05
INM-C NO. :437772810+
VOICE NO.:764088677
FAX NO.:764088678
E-MAIL: Jiahua@SkyFile.com
PORT OF REGISTRY  :KINGSTOWN
OWNS PNI CLUB :CPI
H&M: PICC/USD8,000,000.00


SPEED & CONSUMPTIONS:
ABT 12.5KNTS LADEN ON ABT 22.00 MT IFO 180 CST (RME 25) + ABT 1.5MT MGO

AT SEA BSS BEAUFORT SCALE 4 AND DOUGLAS STATE OF SEA 3 OR
ABT 1.0MT IFO + ABT 1.5MT MGO IDLE OR
ABT 1.5MT IFO + ABT 2.5MT MGO AT PORT FR GEAR WORKING.
(PS. ABT 1.0MT IFO (PORT IDLE) / ABT 1.5MT IFO (PORT WKG) - FOR BOILER ONLY)

ALL DETAILS ABOUT

26

EXHIBIT "2" TO THE COMPLAINT



**Navision Shipping
Company A/S**

Navision Shipping Company A/S
c/o Navision Chartering A/S
Strandvejen 102 E * DK-2900 Hellerup * Denmark

Holcim FZCO                                                                              25 October 2007
c/o Joachim Grieg & Co
Grieg-Gaarden
C.Sundtsgate 17/19
5804 Bergen
Norway

# Hire Statement Recap

### m.v. Jia Hua - C/P  9 August 2007 - F000268 C103

| | | | |
|---|---|---|---|
| **Date of delivery:** | 17-08-07 12:24 UTC | | |
| **Date of redelivery:** | 09-10-07 10:18 UTC | | |

**Total days on hire:**     52,912500

| **Bunkerquantities mt:** | **IFO** | **MDO** | **MGO** |
|---|---|---|---|
| **Delivery:** | 1.000,18 | 0,00 | 96,16 |
| **Redelivery:** | 584,50 | 0,00 | 0,00 |

**Bunkerprices USD:**

| | | | |
|---|---|---|---|
| **Delivery:** | 440,00 | 0,00 | 680,00 |
| **Redelivery:** | 440,00 | 0,00 | 680,00 |

**USD**

**T/C Hire:**

| 17/08 12:24 hrs  - 09/10 10:18 hrs UTC | 52,9125 days at USD 36.000,00 | | 1.904.850,00 |
|---|---|---|---|

**Off-hire:**

| Jia Hua 18/08 02:00 - 19/08 17:30. | 1,645833 days at USD 36.000,00 | (100 pct ) | (59.250,00) |
|---|---|---|---|
| 16/09 00:30 hrs  - 16/09 15:30 hrs | 0,625000 days at USD 36.000,00 | (100 pct ) | (22.500,00) |

| **Commissions deducted** | **3,75%** | (68.366,25) |
|---|---|---|

**Bunkers on delivery**
| IFO 1.000,18 mts at USD 440 | 440.079,20 |
|---|---|
| MGO 96,16 mts at USD 680 | 65.388,80 |

**Bunkers on redelivery**
| IFO 584,5 mts at USD 440 | (257.180,00) |
|---|---|

**Bunkers during off-hire**
| IFO 1,000 mt/day x 1,645833 days at USD 440,00 | (724,17) |
|---|---|
| MGO 1,500 mt/day x 1,645833 days at USD 680,00 | (1.678,75) |

IFO 1,000 mt/day x 0,625000 days at USD 440,00      (275,00)
MGO 1,500 mt/day x 0,625000 days at USD 680,00      (637,50)

**Communication/Entertainment/Victualling USD 1.100  per month pro rata**      1.913,55

**Communication/Entertainment/Victualling during offhire**
19-08-07 02:00 - 20-08-07 17:30 - 1,645833 days at USD 1.100 per month pro rata      (59,52)
16-09-07 00:30 - 16-09-07 15:30 - 0,625000 days at USD 1.100 per month pro rata      (22,60)

**Charterers expenses**
Non Productive Berthage Charges      (12.000,00)
MGO consumption by Chrs of Ows' fuel 10.990 mt @ 680$      7.473,20

**In lieu of hold cleaning**      3.500,00

**Payments:**

Charterers payment 22-08-07      (967.433,50)
Charterers payment 05-09-07      (38.231,08)
Charterers payment 24-09-07      (254.921,06)
Jia Hua      (240.787,44)
Charterers payment received 25-10-2007      (398.773,05)

**Balance in Owners favour**      100.364,83

**Estimated expenses**

|  |  |
|---|---:|
|  | 0,00 |
| Est IFO on Rdly 1022,130 x 440,00 | (449.737,20) |
| Est MDO on Rdly 98,830 x 680,00 | (67.204,40) |
|  | 0,00 |
|  | 0,00 |
| Est IFO on Rdly 1022,130 x 440,00 - Reversed | 449.737,20 |
| Est MDO on Rdly 98,830 x 680,00 - Reversed | 67.204,40 |
|  | 0,00 |

| **Total estimates** | 0,00 |
|---|---:|

Yours faithfully
Navision Chartering A/S
(as agents only)


Steen Crone